## No. 35,761

THE STATE OF KANSAS, by the State Labor Commission, *Appellee*, v. SAM L. SOSNA, an Individual, doing business as SOSNA THEATRE, *Appellant*.

(137 P. 2d 129)

 Opinion filed
May 8, 1943. 

*Ira C. Snyder,* of Manhattan, was on the briefs for the appellant.

*Clark H. McPherson,* of Topeka, argued the cause, and *Charles H. Cory,* of Topeka, and *Harold Hughes,* of Manhattan, were on the briefs for the appellee.

The opinion of the court was delivered by

THIELE, J.: This was an action to recover contributions alleged to be due under the unemployment compensation law, and from a judgment against him the defendant appeals.

The substance of the petition filed was that defendant was an employer and liable for contributions under the unemployment compensation law and that he had failed to make requisite payments for the calendar years 1938, 1939 and 1940. The abstract does not show that any answer was filed. The action was tried on a stipulation of facts. Briefly stated, it was agreed that defendant had had in his employ eight or more individuals for some portion of a day, in each of twenty or more different weeks in the calendar year 1938, and hence was liable under the above-mentioned law, and that that liability was determined after a hearing and by order of the commission of labor and industry on March 29, 1939; that since December 31, 1938, and for the calendar years 1939 and 1940, defendant had not had in his employ eight or more persons for some portion of a day in each of twenty or more weeks; that on April 18, 1941, he had filed an application for termination of coverage, which application was approved by the state labor commissioner on June 11, 1941, and that the amounts set out in the petition as to total wages paid by the defendant to his employees during the years 1938, 1939 and 1940 were correct. It was subsequently stipulated that defendant had never filed a written election to become an employer subject to the unemployment compensation law.

The trial court found the plaintiff should have judgment for the

full amount prayed for and rendered judgment accordingly, and the defendant appeals.

The appellant does not contend the trial court erred in rendering judgment for the year 1938. He does contend that he was not within the purview of the law during the years 1939 and 1940, and that the trial court erred in holding to the contrary.

In 1935 the congress of the United States enacted a federal social security act (42 U. S. C. A., 1101 to 1110, incl.) and thereafter many of the states enacted statutes of similar character, to operate concurrently with the federal act. Reference is later made to two decisions of courts of last resort of other states which have enacted provisions similar to those involved in the instant case.

In Kansas the act known as the "unemployment compensation law" was originally enacted as Laws 1937, ch. 255, appearing as G. S. 1937 Supp. 44-701 et seq. It was amended in parts by Laws 1938, ch. 51, and Laws 1939, ch. 214, the act as amended appearing as G. S. 1939 Supp. 44-701. The act was further amended by Laws 1941, ch. 264, and as amended now appears as G. S. 1941 Supp. 44-701 et seq. The present action arose under the act as amended in 1939 and references hereafter made are to G. S. 1939 Supp.

Limits of space preclude a comprehensive review of the unemployment compensation law. As preliminary to the question as to the length of time an employer is within the purview of the law, we note the law contains within its provisions that as a guide to its interpretation and application, public policy is declared in certain particulars including that social security can be achieved by protecting against unemployment by systematic accumulation of funds during periods of employment to provide benefits for periods of unemployment, and for the compulsory setting aside of unemployment reserves to be used for the benefit of persons unemployed (44-702). The next section deals with definitions of terms used. "Base period" means the first four of the last five completed calendar quarters preceding the first day of an individual's benefit year. An employing unit means any individual who had subsequent to January 1, 1936, in his employ one or more individuals performing services for him within this state, and an employer is "Any employing unit which for some portion of a day, but not necessarily simultaneously, in each of twenty different weeks, whether or not such weeks are or were consecutive, within either the current or the preceding calendar year, has or had in employment eight or more individuals" as well

as any employing unit, which having become an. employer, had not ceased to be an employer subject to the act, or during the effective period of his election pursuant to section 44-711 (c) to which reference is later made (44-703).

By subsequent sections provision is made for benefits to eligible unemployed individuals, this section providing for a scale of benefits determined by wages earned during his base period, and fixing the amount and duration of benefits paid (44-704); fixing eligibility conditions (44-705); disqualifications for benefits (44-706); for making claims for benefits and administrative provisions for determining the claim (44-709) and for contributions which employers must make to the fund (44-710) which is to be established and managed as later provided (44-712), provision being made for the collection of contributions to the fund (44-717). Only one section further need be noticed. It provides for the period, election and termination of the employer's coverage (44-711) and its interpretation is decisive of the present appeal.

For our purposes section 44-711 reads as follows:

"(a) Any employing unit which is or becomes an employer subject to this act within any calendar year shall be subject to this act during the whole of such calendar year. (b) Except as otherwise provided in subsection (c) of this section, an employing unit shall cease to be an employer subject to this act only as of the 1st day of January of any calendar year, if it files with the commission, prior to the day on which contributions for employment in such calendar year are first due, a written application for termination of coverage, and the commission finds that there were no twenty different weeks within the preceding calendar year within which such employing unit employed eight or more individuals in employment subject to this act. . . . (c) (1) An employing unit, not otherwise subject to this act, which files with the commission its written election to become an employer subject hereto for not less than two calendar years, shall, with the written approval of such election by the commission, become an employer subject hereto to the same extent as all other employers, as of the date stated in such approval, and shall cease to be subject hereto as of January 1 of any calendar year subsequent to such two calendar years, only if at least thirty days prior to such 1st day of January, it has filed with the commission a written notice to that effect. . . ."

The gist of appellant's argument is that subdivision (a) of the above section is a definite limitation on the period of the employer's liability, and in and of itself should determine this appeal. He further contends that subdivisions (b) and (c) attempt to lay an unnecessary burden upon everybody connected with or affected by the law. In connection with the last contention, appellant states

that he made reports to the commission and from them it could be determined whether or not he continued to be under the law.

Taking up these contentions in order, we think it may not be said that subdivision (a) is subject to the interpretation appellant seeks to put on it, nor that it can be separated and isolated from other parts of the section or the entire law. In our opinion subdivision (a) is merely a declaration that if an employer is subject to the act for any part of a calendar year, he is subject during the whole of that year, and not a declaration that his liability under the act ceases at the end of any calendar year unless he has a sufficient number of employees to again bring him within its terms.

Although the act as existing in 1939 has since been changed in certain particulars, the benefits payable to an eligible unemployed individual were determinable, not from what he earned immediately prior to his unemployment, but at a rate computed on his base period, with a provision that the total amount of benefits payable during any benefit year should not exceed sixteen percent of the wages which he earned during his base period, all as more specifically set out in section 44-704. The result was and is that the eligible employee might be paid benefits in one calendar year based on earnings of a previous calendar year.

Viewed from another angle, an employer might not have a sufficient number of employees every quarter of a calendar year so that without more he would be under the act. But so far as any one employer was concerned, whenever he did have eight or more employees who, for some part of a day, not necessarily simultaneously, in each of twenty weeks, whether consecutive or not, he came under the act by virtue of its terms, and once under he was under for the whole of the calendar year. Were the statute otherwise silent perhaps it could be said that an employer was under the act one calender year, by reason of having a sufficient number of employees for the requisite period, and was not under the succeeding year, because he did not have a sufficient number for a sufficient time. To avoid such a situation, with attendant difficulties of administration both with reference to the duty of the employer to contribute and the right of the employee to benefit, the legislature saw fit to include section 44-711 (b) which provided, in effect, that an employer, once under the act by reason of the factual situation bringing him in by operation of law, continued to be under it unless he made his application for termination of coverage and the commission found

that the facts warranted such relief. It is conceded by the stipulated facts that no such application was timely filed by the appellant employer covering the years 1939 and 1940. We think it rather clear from the act that it was intended that an employer once under the act should continue to be so unless he filed his application for termination of coverage. This conclusion is fortified by an examination of section 44-711 (c) which, in effect, provides that an employer not otherwise under the act, might by election subject himself thereto for a period of not less than two years and thereafter unless he filed a timely notice with the commission that he ceased to be subject to its terms.

There is some argument that it is unreasonable to compel an employer to file such an application for termination of coverage, it being argued that the quarterly reports made by the employer to the commission showed whether he had a sufficient number of employees for a sufficient time, and thus disclosed whether he was or was not under the law, and that the interpretation of coverage contended for by the commission and as made by the trial court makes unduly burdensome requirements on the employer. The stipulation does not cover the details of any reports made by the employer to the commission, and in its brief the commission states the reports made do not cover. In any event, there appears to be two answers to appellant's contention as to reports or what they show. One is that if the employer were not under the act, he would not have to make the reports, or if he did, that requirement would be just as unreasonable and burdensome as the making and filing of an application for termination of coverage. The other is that under the act, the employer might not have a sufficient number of employees for a sufficient time to bring him under the act for the first three quarters but would have for the last quarter of a year. While under section 44-711 (a) that would bring him in for the whole of such calendar year, if appellant's contentions were good, the commission would never know with certainty until the end of a calendar year which employers were under the act and which were not, and necessarily whether a claimant for benefits was eligible therefor might be dependent in certain cases on the situation as it developed in the future. It seems clear to us the legislature did not so intend.

The question of the reasonableness of a requirement that an employer once under the act must apply for termination of coverage

has been the subject of decisions of the courts of last resort of two states having unemployment compensation acts similar to ours.

In *Unemployment Com. v. Androscoggin et al.,* 137 Me. 154, 16 A. 2d 252, decided in 1940, three cases were under consideration. As to the corporate defendant it appears that during 1937 it had a sufficient number of employees to bring it under the act, and it paid its contributions for that year. It filed no application for termination of coverage and resisted an action to collect for the year 1938 on the ground that during that year it did not employ the requisite eight workmen. The court reviewed portions of the statute applicable and held that the failure of the company, which had employed eight or more employees during 1937 so as to be required to contribute, but which employed less than eight during 1938, to file an application for termination of coverage, continued the company's status as an employer under the law, and that the carry-over provision requiring one who had contributed to the unemployment compensation fund as an employer to file a written application for termination of coverage before a certain date or his status as an employer under the act would be continued, was valid in view of the beneficial provision of the act in simplifying the work of the commission without unduly burdening the employer and at the same time giving the employer full protection.

In *Webb v. State,* (Tex. Civ. App., 1941) 156 S. W. 2d 557, the action was to recover unemployment compensation contributions due for the year 1938. The trial court found that an employer under the law for 1937 had paid the necessary contributions; that he had filed no application for termination of coverage until March, 1940; that in 1938 he did not have eight employees for the requisite period, and concluded that in 1938 he had not ceased to be an employer under the law, and allowed recovery. In the supreme court the employer contended the provision for continuation of liability was unconstitutional. The court relying on its decision in *Friedman v. American Surety Co.,* 137 Tex. 149, 151 S. W. 2d 570, which upheld generally the constitutionality of the act, sustained the trial court, the headnote of the decision reciting:

"The section of Unemployment Compensation Act, providing for termination of coverage of employing unit not employing eight or more individuals on any of 20 different days in different weeks during calendar year preceding unit's application for such tremination, is not unconstitutional as making unreasonable or arbitrary classifications and exceptions."

Appellant cites no decision in support of his contention the provisions for coverage (44-703 [h]) and for termination thereof (44-711) are unreasonable or unduly burdensome, nor as applied to unemployment compensation laws, have we found any which support it. While the two cases above noted are not controlling, they are persuasive. In effect they agree with our own conclusion that the sections mentioned may not be stricken down as unreasonable or unduly burdensome.

The judgment of the trial court is affirmed.