STATE ex rel. OKLAHOMA EMPLOYMENT SEC. COM. v. BURTIS.

No. 32916. Oct. 28, 1947.

*185 P. 2d 944.*

Bruton Wood, Burton Duncan, and Gerald S. Tebbe, all of Oklahoma City, for plaintiff in error.

Meacham, Meacham, Meacham & Meacham, of Clinton, for defendant in error.

LUTTRELL, J. On September 10, 1942, Buff B. Burtis, d.b.a. Burtis Press & Office Supply Company, hereinafter referred to as plaintiff, filed in the district court of Custer county a petition to review an order made by Oklahoma Employment Security Commission, hereafter referred to as defendant, assessing plaintiff for contributions to the Unemployment Compensation Fund for 1940. The proceeding was heard by the trial court without a jury, upon a transcript of the record of the hearing before the commission, and judgment rendered for plaintiff. The defendant commission appeals.

At the hearing before the commission it was stipulated that during the year 1938 Buff B. Burtis, d.b.a. Clinton Publication Company, had in employment eight or more individuals and was an employer subject to the Oklahoma Unemployment Compensation Law; that during the first calendar quarter of 1939, Buff B. Burtis sold said business to Oklahoma Newspaper, Inc., which continued to be liable under the Unemployment Compensation Law and filed reports as therein required; that thereafter Buff B. Burtis began a new business known as Burtis Press & Office Supply Company, in which business he did not employ eight or more persons in such manner as to be liable as an employer by reason of such new business under the provisions of the act, and that Burtis did not file an application for termination of coverage prior to January 5, 1940. It was further stipulated that by reason of his ownership of Clinton Publication Company during the year 1938, he remained an employer subject to the Unemployment Compensation Law during the year 1939. Apparently he paid, or was not assessed, for the remainder of 1939, as the assessment against him covers only the year 1940.

The parties agree that the applicable law is chapter 52, S.L. 1936-1937, p. 30, et seq., and the sole question presented is whether plaintiff, by failing to file an application for termination of coverage as provided by section 8 of said act, continued to be an employer obligated to make payment of contributions to said fund, although he had sold his business to another who made such payments upon said business. It is conceded that the new business organized by plaintiff did not employ a sufficient number of persons to make him an employer within the terms of the act.

The sole contention of the commission is that because Burtis, after his sale of the business known as Clinton Publication Company, did not file prior to January 5, 1940, a written application to terminate his coverage, he continued to be an employer subject to the terms of the law. It contends that only by so doing could he termi-

nate his status as an employer, citing in support of this contention Maine Unemployment Compensation Commission v. Androscoggins, Jr. (Me.) 16 Atl. 2d 252; Harris v. State (Tex.) 159 S.W.2d 172; Murphy v. Hurlbut Undertaking Co. (Mo.) 142 S.W. 2d 449; and State v. Sosna (Kan.) 137 P. 2d 129. None of these cases, however, involve a factual situation similar to the one in the case at bar, as in none of them did the employer sell his business to another who continued to make payments thereafter as an employer.

Section 8, ch. 52, supra, insofar as applicable, provides as follows;

"(a) Any employing unit which is or becomes an employer subject to this Act within any calendar year shall be subject to this Act during the whole of such calendar year.

"(b) Except as otherwise provided in subsection (c) of this section, an employing unit shall cease to be an employer subject to this Act only as of the 1st day of January of any calendar year, if it files with the Commissioner prior to the 5th day of January of such year, a written application for termination coverage, and the Commissioner finds that there were no twenty different days, each day being in a different week within the preceding calendar year, within which such employing unit employed eight or more individuals in employment subject to this Act. For the purpose of this subsection, the two or more employing units mentioned in paragraph (2) or (3) or (4) of section 19 (f) shall be treated as a single employing unit."

Section 19 (e) of the Act defines an employing unit to be:

" 'Employing Unit' means any individual or type of organization, including any partnership, association, trust, estate, joint-stock company, insurance company or corporation, whether domestic or foreign, or the receiver, trustee in bankruptcy, trustee or successor thereof, or the legal representative of a deceased person, which has or subsequent to January 1, 1935, had in its employ one or more individuals performing services for it within this State."

Section 19 (f) defines an employer as follows:

"(f) 'Employer' means:

"(1) Any employing unit which for some portion of a day, but not necessarily simultaneously, in each of twenty different weeks, whether or not such weeks are or were consecutive, within either the current or the preceding calendar year, has or had in employment, eight or more individuals (irrespective of whether the same individuals are or were employed in each such day);

"(2) Any employing unit which acquired the organization, trade or business or substantially all the assets thereof, of another which at the time of such acquisition was an employer subject to this Act;"

—and subdivision 5 of section 19 (f) further defines an employer as:

"Any employing unit which, having become an employer under paragraph (1), (2), (3), or (4), has not, under section 8, ceased to be an employer subject to this Act, . . ."

A study of the law convinces us that the commission, in arriving at its conclusion that plaintiff was liable, failed to give effect to that part of section 8 providing that "For the purpose of this subsection, the two or more employing units mentioned in paragraph (2) or (3) or (4) of section 19 (f) shall be treated as a single employing unit." The evident purpose of that provision was to place the purchaser of a business conducted by one who was an employer under the law, in the shoes of the seller of the business, so that the purchaser would, in effect, be the same employer as the seller had theretofore been, and would be entitled to any benefits accruing to the seller at the time the sale was made, and liable for any payments thereafter for which the seller would have been liable had the seller continued to operate the business. In such case the purchaser in effect became the employer in the place and

stead of the former employer, the seller, and the seller was under no further liability under the law.

While this court has not heretofore passed upon this proposition, the courts of other states, under provisions similar if not identical to those quoted above, have in a number of cases passed upon the liability of the purchaser of such business as a succeeding employer, and have uniformly held that the purchaser by his acquisition of the business becomes the employer and is liable for the tax.

In Karlson v. Murphy (Ill.) 56 N.E. 2d 839, the Supreme Court of that state held that changes in a partnership, which was an employer under the Illinois law, which changes resulted from the death or withdrawal of various partners and the taking in of other partners, so that technically six different partnerships conducted the business during the year, did not render each successive partnership a separate employer, but that all six constituted only a single employer.

In California Employment Stabilization Commission v. Lewis (Cal.) 157 P. 2d 38, the District Court of Appeals of that state held that one who acquired the business of an employer during the tax year became an employer and was liable for the tax where he failed to terminate his liability by filing an application to terminate coverage. The court cited with approval Southern Photo & Blue Print Co. v. Gore (Tenn.) 114 S.W. 2d 796.

In that case the Supreme Court of Tennessee announces the rule as follows:

"A partnership which acquired all the assets and good will of a corporation which was subject to the Unemployment Compensation Law became liable for contributions as an 'employer' in absence of application for termination of coverage, notwithstanding that partnership employed less than required minimum of employees or that contributions allegedly constituted a tax on the 'transfer of property', as partnership was charged with knowledge that predecessor occupied position as an 'employer' under the statute and that partnership would succeed to the status."

In State Department, etc., v. Vasilatos (Wash.) 150 P. 2d 695, the Supreme Court of that state, construing a similar provision of the Washington law, said:

"A new partnership, acquiring business of old partnership and succeeding to the status of former partnership as an 'employing unit' and 'employer' under Unemployment Compensation Act, retained such status until it applied for termination of coverage pursuant to the act, and burden of ascertaining their status and taking steps to terminate such status was upon successor partnership."

In Spagnola v. State (Iowa) 23 N.W. 2d 433, the Supreme Court of Iowa held that one who purchased a grocery store of an "employer," but did not purchase his accounts receivable, did not acquire substantially all the assets of the employer, since the accounts receivable were assets, and therefore did not succeed to the prior status of the seller as an employer.

From the above decisions it appears that the courts, in construing provisions similar to, or identical with, that portion of section 8 last above quoted, have consistently ruled that the purchaser is a successor to the employer whose business he purchases, and that liability for any assessments as employer thereafter devolves upon him. In the instant case it is conceded that the successor employer has continued to pay assessments against the business purchased by him, and which had theretofore been paid by Burtis as the owner of such business. Under such circumstances it was unnecessary for Burtis, upon the sale of his business, to file application for the termination of coverage, since his successor became the employer, and continued in all respects to comply with the law and make payments of the assessments due. To hold, in such case, that the law required both the pur-

chaser and seller to make unemployment contribution payments upon the same business unless the seller filed an application to terminate coverage would, in our judgment, be at variance with the provisions of the statute since, when the seller sold his business, he ceased to be an employer, or an employing unit, as the same is defined in section 19 (e). It would be an unreasonable construction of the law to hold that the seller continued to be an employer and subject to the provisions of the act, and, at the same time, hold that the purchaser also became an employer and subject to the provisions of the act.

In State v. Tulsa Flower Exchange, 192 Okla. 293, 135 P. 2d 46, referring to the Unemployment Compensation Law, we said:

"The statute here under consideration authorizes the collection of a tax from employers of a certain class. Since it is a tax statute it should be construed with the taxpayer's interest uppermost in mind, and the courts will not enlarge upon its provisions to make them applicable in any case not clearly within the contemplation of the Legislature."

To construe the act so as to hold both plaintiff and his successor in interest liable for the same tax would be contrary to the letter and spirit of the act.

Affirmed.

HURST, C.J., DAVISON, V.C.J., and RILEY, WELCH, CORN, and GIBSON, JJ., concur.