[No. 29178.   Department One.   July 18, 1944.]

THE STATE OF WASHINGTON, *Appellant*, v. GEORGE VASILATOS
et al., *Respondents*.

THE STATE OF WASHINGTON, *Respondent*, v. GEORGE
VASILATOS et al., *Appellants*.[1]

*The Attorney General, George W. Wilkins,* and *Frank W. Foley, Assistants,* for appellant state of Washington.

*John M. Wilson,* for appellants Vasilatos *et al.*

*The Attorney General, George W. Wilkins,* and *Frank W. Foley, Assistants,* for respondent state of Washington.

*A. Clemens Grady,* for respondents Pete Chatos *et al.*

[1]Reported in 150 P. (2d) 695.

BEALS, J.—The state of Washington, department of unemployment compensation and placement, instituted an action before the superior court for Jefferson county against George Vasilatos and T. N. Vasilatos, doing business as Willmer's Cafe, and Pete Chatos and Bill Kounadis, doing business as Central Cafe. The state, through the same department, instituted an action before the superior court for Clallam county, being cause No. 8701 of the files of that court, against George Vasilatos and T. N. Vasilatos, doing business as Willmer's Cafe, and Pete Chatos, T. N. Vasilatos, and George Vasilatos, doing business as Central Cafe. Thereafter, by stipulation, the first suit above referred to was transferred to the superior court for Clallam county, where it became cause No. 8803 of the files of that court, and the two causes were consolidated and tried together.

Both actions were brought for the purpose of recovering from the respective defendants assessments alleged to be due under the unemployment compensation statute. In superior court cause No. 8803, judgment was entered in favor of the plaintiff against defendants Pete Chatos, T. N. Vasilatos, and George Vasilatos, for the sum of $14.65, the judgment reversing an order and notice of assessment of the commissioner of unemployment compensation and placement, dated February 28, 1942, declaring certain other amounts due the department from defendants Pete Chatos and Bill Kounadis, the judgment further directing that the matter be remanded to the department for further proceedings. This judgment was entered June 9, 1943, and from it the commissioner has appealed to this court.

In superior court cause No. 8701, judgment was entered affirming an order of the commissioner declaring that defendants George Vasilatos and T. N. Vasilatos were indebted to the department in the sum of $622.69, as was a further order of the commissioner declaring that defendants Pete Chatos, T. N. Vasilatos, and George Vasilatos were indebted to the department in the sum of $14.65. This judgment was entered July 28, 1943, and from this judgment defendants George Vasilatos and T. N. Vasilatos have appealed to this court.

After the records were filed here, pursuant to a stipulation between the parties the two causes were consolidated for purposes of appeal as cause No. 29178 of the files of this court.

The following facts were found by the commissioner, his findings being supported by the record before us. During 1936 and subsequent years pertinent to this litigation, T. N. and George Vasilatos were copartners, doing business as Willmer's Cafe in the city of Port Angeles. At no time material to this action did they employ eight or more individuals in each of twenty weeks of one year. During the year 1937, however, the partnership above referred to did employ eight or more individuals during the year.

During the year 1936 and until May 11, 1937, T. N. and George Vasilatos and Pete Chatos were copartners, doing business in the city of Port Townsend as Central Cafe, each partner owning a one-third interest in that business. They at no time employed at Central Cafe eight or more individuals in each of twenty different weeks of one year, but from January 1, 1937, to May 11, 1937, eight or more different individuals were employed at various times. It is appropriate to state here that at no time material to the questions raised on this appeal did Central Cafe employ eight or more individuals in each of twenty different weeks in one year.

May 11, 1937, T. N. and George Vasilatos sold their interests in Central Cafe to Pete Chatos, Jerry Chatos, and Bill Kounadis, who operated the cafe as partners, and during the year 1937 employed eight or more individuals at various times.

August 9, 1938, Jerry Chatos sold his interest in Central Cafe to his two partners, Pete Chatos and Bill Kounadis, who continued to operate the cafe thereafter during all times pertinent to the questions raised on this appeal. From August 10, 1938, to December 31, 1938, this partnership employed eight or more individuals.

If Willmer's Cafe and Central Cafe are treated as a single employing unit, that unit did employ eight or more individuals in each of twenty different weeks during the year 1936.

From the foregoing facts, the commissioner concluded that Willmer's Cafe and Central Cafe were employing units within the meaning of the unemployment compensation statute, and were owned or controlled by the same interests until May 11, 1937; that, by virtue of this ownership or control, both units became employers within the meaning of the statute, and liable for contributions under the act; that Central Cafe, under the partnerships owning and operating it subsequent to May 11, 1937, continued to be an employing unit; that, since neither Central Cafe nor Willmer's Cafe applied for termination of coverage, as provided by the statute, each unit continued to be liable for all assessments levied between the following dates: T. N. and George Vasilatos, doing business as Willmer's Cafe, January 1, 1937—June 30, 1941; Pete Chatos, T. N. and George Vasilatos, as Central Cafe, January 1, 1937—May 10, 1937; Pete Chatos and Bill Kounadis, as Central Cafe, May 11, 1937—June 30, 1941. After making certain adjustments, the commissioner finally levied assessments as follows: Against T. N. and George Vasilatos, as Willmer's Cafe, $622.69; against Pete Chatos, T. N. and George Vasilatos, as Central Cafe, $14.65; and against Pete Chatos and Bill Kounadis, as Central Cafe, $639.33.

We shall first consider the appeal of the commissioner, who assigns error upon the trial court's ruling (judgment in cause No. 8803) that both cafes did not become employers within the meaning of the statute, and that the sale of Central Cafe did not constitute the purchasers an employer. Error is also assigned upon that portion of the judgment which declared the order and notice of assessment served upon Pete Chatos and Bill Kounadis, doing business as Central Cafe, during the period May 11, 1937—June 30, 1941, to be invalid, and remanding the matter to the commissioner with instructions to vacate the assessment.

The law applicable to this case is found in Rem. Rev. Stat. (Sup.), § 9998-119 [P. C. § 6233-317], which reads in part as follows:

"(e) 'Employing unit' means any individual or type of organization, including any partnership, association, trust,

estate, joint-stock company, insurance company or corporation, whether domestic or foreign, or the receiver, trustee in bankruptcy, trustee or successor thereof, or the legal representative of a deceased person, which has or subsequent to January 1, 1937, had in its employ eight or more individuals performing services for it within this state. All individuals performing services within this state for any employing unit which maintains two or more separate establishments within this state shall be deemed to be employed by a single employing unit for all the purposes of this act.

" (f) 'Employer' means:

" (1)   Any employing unit which in each of twenty different weeks within either the current or the preceding calendar year (whether or not such weeks are or were consecutive) has or had in employment eight or more individuals (not necessarily simultaneously and irrespective of whether the same individuals are or were employed in each such week);

" (2)   Any employing unit which acquired the organization, trade or business, or substantially all the assets thereof, of another which at the time of such acquisition was an employer subject to this act;

" (3)   Any employing unit which acquired the organization, trade or business or substantially all the assets thereof, of another employing unit and which, if treated as a single unit with such other employing unit, would be an employer under paragraph (1) of this subsection;

" (4)   Any employing unit which together with one or more other employing units, is owned or controlled (by legally enforcible means or otherwise) directly or indirectly by the same interest[s], or which owns or controls one or more other employing units (by legally enforcible means or otherwise), and which, if treated as a single unit with such other employing unit, would be an employer under paragraph (1) of this subsection;

" (5)   Any employing unit which, having become an employer under paragraph (1), (2), (3), or (4), has not, under section 8, ceased to be an employer subject to this act."

██   It would seem that the liability of the Chatos-Kounadis partnership for the payment of assessments depends upon whether or not it was the successor in interest of an employing unit which was an employer under the act.  The

superior court adopted the contention of respondents (in this case) Chatos *et al.*, that subsection (e), *supra*, defining "employing unit" applies to the entity controlling a business, and not to the particular establishment so controlled. Respondents then contend that, as both Willmer's Cafe and Central Cafe were owned by the Vasilatos partnership, and that from this partnership the Chatos-Kounadis partnership acquired only Central Cafe, the latter partnership did not acquire all "or substantially all the assets" of an employing unit, and that for this reason the Chatos-Kounadis partnership never succeeded to an employer's status. The commissioner contends that the trial court erred in ruling as above stated.

The trial court erred in holding that T. N. and George Vasilatos constituted a single employing unit, maintaining two separate establishments, the Central Cafe at Port Townsend and Willmer's Cafe at Port Angeles. While the two men named were, as partners, conducting Willmer's Cafe, there was a separate and distinct partnership owning and operating Central Cafe at Port Townsend, that partnership being composed of Pete Chatos and T. N. and George Vasilatos. The evidence introduced shows beyond question that there was no connection between the two businesses, save that T. N. and George Vasilatos owned, as partners, all of one, and that each was a one-third partner in the other. If T. N. and George Vasilatos had, as partners, operated as one business two or more cafes, the profits from all accruing to the partnership, a different situation would be presented.

Upon the record in the case at bar, we hold that Willmer's Cafe and Central Cafe were owned and operated by separate partnerships, and that each cafe was an employing unit within the provisions of subsection (e), *supra*. As each cafe was an employing unit within the provisions of the statute, it follows, because of the factual situation, that, pursuant to subsection (f) (4) of the act, *supra*, each unit was an employer.

In the case of *In re Appeal of Tacoma Auto Freight Depot*, 19 Wn. (2d) 334, 142 P. (2d) 485, a situation was

presented somewhat analogous to that in the case at bar. The matter concerned three corporations having common stockholders and interlocking directorates. In A and B corporations, two sisters each owned fifty per cent of the stock in each corporation; their respective husbands were on the board of directors of each corporation. In C corporation, the stock was equally divided between the communities composed of these sisters, their respective husbands, and a third party. The management of the three corporations was controlled by interlocking directorates, it appearing that the business of the three corporations was closely coordinated. No one of the three corporations employed eight individuals, but, when considered together, the three corporations employed eight or more during the period then under consideration. This court held that each corporation was an employing unit, and that they were liable under the statute. In the course of the opinion, we stated:

"In the case before us, the appellants pooled their interests and business activities and adopted and pursued a method of joint management and operation of two auto freight lines to and from a central freight receiving, exchange, and delivery depot, the latter also serving other auto freight lines. They were operated and controlled by and through an interlocking directorate and official personnel, and the active business management of all of them was delegated to John H. Potter and Mark R. Jones. Each of the three appellants was an employing unit, and, when they pooled their business activities, as they did here, and vested the control of a joint activity in an interlocking directorate and official personnel, it seems clear to us that it follows that the employing units were controlled directly by the same interests; and the fact that this control might at any time have been taken away by the action of the stockholders of the corporate employing units, can make no difference. So long as the respective employing units chose to operate in the manner disclosed by the record, they were collectively an employer and subject to the making of contributions to the unemployment fund."

The foregoing paragraph was quoted with approval in the case of *In re Pacific Coast Adjustment Co., Inc.*, 20 Wn. (2d) 734, 151 P. (2d) 831.

By the use of the phrase "collectively an employer," *supra,* it was not implied that the three corporations actually coalesced as one employer, the idea being, rather, that the status of each corporation was determined by considering it in conjunction with the other two, and that, once that status had been fixed, each corporation became an employer under the act, to remain liable as such during the continuance of the interlocking ownership and control, and until steps should be taken to terminate the employer status pursuant to Laws of 1937, chapter 162, § 8 (b) (Rem. Rev. Stat. (Sup.), § 9998-108 [P. C. § 6233-311] (b)). In the case cited, it appeared from the peculiar method followed by the three corporations in carrying on their business, that it was proper to treat them as one for bookkeeping and accounting purposes, the situation being adequately described by the word "collectively."

The *Tacoma Auto Freight* case applies to the situation existing between the partners in the case now under consideration, as the partnership existed prior to May 11, 1937. We accordingly hold that, prior to the date mentioned, T. N. and George Vasilatos, as Willmer's Cafe, and the same two men with the addition of Pete Chatos, doing business as Central Cafe, were each an employing unit and an employer within the provisions of the unemployment compensation act.

We shall now discuss the questions raised on the appeal of George and T. N. Vasilatos, doing business as Willmer's Cafe, and the same appellants in so far as they were interested in Central Cafe, from the judgment bearing date July 28, 1943, rendered in Clallam county cause No. 8701.

On this appeal, appellants make the following assignments of error:

"(a)  The evidence does not support the findings of fact of the appeal tribunal as confirmed by the commissioner and the court, and the decision of the commissioner is arbitrary and capricious.

"(b)  The findings of fact of the appeal tribunal confirmed by the commissioner and the court do not support the decision and the law was therefore misapplied."

By the judgment appealed from, the order of the commissioner dated February 28, 1942, fixing the amount due the office of unemployment compensation and placement from George and T. N. Vasilatos, doing business as Willmer's Cafe, in the amount of $622.69, was affirmed, as was the order of the commissioner fixing the amount due from George and T. N. Vasilatos and Pete Chatos, doing business as Central Cafe, for the period March 16, 1937, to May 11, 1937, in the amount of $14.65.

While the evidence is confusing and not easy to analyze, it cannot be held that the trial court erred in affirming the findings of fact of the appeal tribunal as confirmed by the commissioner. Neither can it be held that the decision of the commissioner is arbitrary and capricious.

As to appellants' second assignment of error, which raises the question of the correctness of the conclusions entered upon the findings, appellants contend that the conclusions drawn are incorrect, because there is no finding that subsequent to January 1, 1937, and prior to May 11, 1937, Willmer's Cafe had in its employ eight or more individuals. It is true, as argued by these appellants, that the findings of fact merely state that during the year 1937 Willmer's Cafe had in its employ eight or more individuals, without segregating any portions of that year during which they were so employed. The evidence, however, shows beyond question that eight or more individuals were employed by Willmer's Cafe between January 1, 1937, and May 11, 1937.

Appellants argue that, since the record does not show that eight individuals were ever simultaneously employed, or employed within the same week, the aggregate number cannot be used to establish the status of Willmer's Cafe as an employing unit, citing in support of this contention the case of *Ernst v. Kootros*, 196 Wash. 138, 82 P. (2d) 126. In the opinion in the *Ernst* case it appears that it was

". . . admitted in the case that, in 1936, or prior to January 1, 1937, appellant had eight or more persons in his employ during twenty weeks of that calendar year, but it is likewise admitted that, after January 1, 1937, he

never had as many as eight individuals performing services for him within this state or at all."

The question in the case cited was whether or not the legislature had used the number "eight" inadvertently, instead of the number one. After considering the legislative history of the act, this court held that the statute meant exactly what it said, and that the number eight had been deliberately used by the legislature, and had not been employed inadvertently or by mistake for some other number. The question here presented was not passed upon.

In the case of *Bates v. McLeod,* 11 Wn. (2d) 648, 120 P. (2d) 472, it was contended that the determination of an employer's status by reference to the number of persons in his employ during the year before the effective date of the act was void as retroactive legislation. It was held that the reference employed was a reasonable method established for determining classifications, and did not infringe upon any constitutional rights. The court also held, however, that the act was unconstitutional and void, in so far as it permitted the levy and collection of assessments for any period prior to the effective date of the act.

No case has been called to our attention in which this court has construed the statute above referred to in connection with the question here presented, and determined whether under the statute the eight individuals referred to therein must have been employed simultaneously or during the same week. The pertinent portion of the statute is found in Rem. Rev. Stat. (Sup.), § 9998-119 [P. C. § 6233-317] (e):

" 'Employing unit' means any individual or type of organization, including any partnership, . . . which has or subsequent to January 1, 1937, had in its employ eight or more individuals performing services for it within this state. . . ."

In the two cases last above cited, this court stressed the fact that the act means exactly what it says, and that the language of the statute being plain and unambiguous, there is no room for judicial construction. The statute quoted above makes no reference to the employment of the "eight

or more individuals" at any particular time or during any week or number of weeks, and no good reason exists for reading such phrases into the act.

We therefore hold that, to become an employing unit under the statute in question, it is sufficient if the individual or organization has or had in its employ eight or more individuals after January 1, 1937, regardless of whether or not such individuals were employed simultaneously within the same week or within any particular number of weeks. Of course, the employing individual or agency does not become liable under the statute unless as an employing unit he or it also becomes an employer within the purview of § 9998-119 (f).

By Laws of 1941, chapter 253, §§ 19 (e) and 19 (f) (1), the unemployment compensation act was amended so as to bring all persons, organizations, or partnerships (save those specifically exempted) employing one or more persons within the purview of the act. Hence, the problems dealt with in this case are not likely to arise in the future.

■ Appellants further argue that, since the partnership composed of T. N. and George Vasilatos and Pete Chatos was dissolved May 11, 1937, there was after that date no one who could apply for termination of coverage in accordance with the provisions of Rem. Rev. Stat. (Sup.), § 9998-108. There is no merit in this contention, as pursuant to § 9998-119 (f) (2), the new partnership succeeded to the status of the former partnership under the act, and, pursuant to paragraph (5) in the same section, the new partnership retained this status until it should apply for termination of coverage pursuant to the provisions of the act. Necessarily, the burden of ascertaining their status under the unemployment compensation statute, and of taking any steps which might be advantageous to them, rested upon the members of the successor partnership.

In this case, the findings of fact of the appeal tribunal, which were affirmed by the commissioner and by the trial court, support the judgment entered which is before us for review on appellants' appeal.

The judgment in superior court cause No. 8803, dated June 9, 1943, from which the commissioner of unemployment compensation and placement has appealed to this court, is reversed, with instructions to affirm the order of the commissioner entered in that proceeding.

The judgment in superior court cause No. 8701, dated July 28, 1943, from which T. N. and George Vasilatos appealed, is affirmed.

BLAKE and JEFFERS, JJ., concur.

STEINERT, J. (dissenting)—Upon the grounds and for the reasons stated in the dissenting opinion in the case of *In re Pacific Coast Adjustment Company, Inc.*, 20 Wn. (2d) 734, 151 P. (2d) 831, I dissent from the majority opinion herein. I do not think that either Willmer's Cafe, in Port Angeles, or Central Cafe, in Port Townsend, can or should be considered *employers* within the meaning of the unemployment compensation act, although it may be conceded that each was an *employing unit*. As stated in the majority opinion herein, each was a separate and distinct partnership, with no connection between the two businesses.

The case of *In re Appeal of Tacoma Auto Freight Depot*, 19 Wn. (2d) 334, 142 P. (2d) 485, which the majority opinion herein cites as presenting a situation analogous to that in the case at bar, does not, in my opinion, present any comparable analogy at all. In that case, the various parties "pooled their interests and business activities and adopted and pursued a method of joint management and operation of two auto freight lines to and from a central freight receiving, exchange, and delivery depot." They were operated and controlled by and through "an interlocking directorate and official personnel." They were "collectively an employer." The essence of that opinion, as quoted in the majority opinion herein, demonstrates the dissimilarity between the two cases.

I think the judgment in cause No. 8803 of the superior court should be affirmed and that the judgment in cause No. 8701 of that court should be reversed.

SIMPSON, C. J., concurs with STEINERT, J.