STATE ex rel. OKLAHOMA EMPLOYMENT SEC. COM. et al. v. FIRST NAT. BANK OF TEXHOMA.

No. 32100. Nov. 12, 1946.

*174 P. 2d 259.*

Bruton Wood, Burton Duncan, and Gerald S. Tebbe, all of Oklahoma City, for plaintiffs in error.

Embry, Johnson, Crowe, Tolbert & Shelton, of Oklahoma City, and Rizley & Tryon, of Guymon, for defendant in error.

PER CURIAM. This was a proceeding in the district court on appeal from an order of the Oklahoma Employment Security Commission. The order of the commission denied the application of the First National Bank of Texhoma for a refund of contributions paid during 1941 and 1942. The Texhoma bank was held liable by the commission for the payment of contributions as an employer for the reason that during this period the Texhoma bank and the First National Bank of Clinton were owned or controlled (by legally enforceable means or otherwise) directly by the same interest, and therefore should be treated as a single employing unit employing more than eight persons. From the judgment of the district court for the applicant, the state appeals.

In February, 1936, Frank A. Sewell and Arthur Littell, who were then president and vice president, respectively, of the Texhoma bank, opened the First National Bank of Clinton. During the period in question the stockholders, officers, and directors of the two banks and the number of shares owned were as follows:

| Texhoma Bank | Shares |
|---|---|
| Frank A. Sewell, President, director | 190 |
| Arthur Littell, Vice President, director | 40 |
| E. Lee Nichols, Cashier, director | 5 |
| Mrs. Trimble B. Latting, director | 5 |
| Mrs. Frank A. Sewell, director | 5 |
| Daisy Nield | 5 |
| Texhoma Bank—Total Shares | 250 |

| Clinton Bank | Shares |
|---|---|
| Frank A. Sewell, President, director | 401 |
| Arthur Littell, Vice President, director | 64 |
| Mrs. Trimble B. Latting, Director | 10 |
| Mrs. Arthur Littell, director | 5 |
| Mrs. Frank A. Sewell, director | 10 |
| C. J. Chandler | 10 |
| Clinton Bank—Total Shares | 500 |

During the same period the active management of the Texhoma bank was in the hands of E. Lee Nichols, while

the active management of the Clinton bank was in the hands of Mr. Sewell until April, 1942, when, upon his moving to Oklahoma City, the management was undertaken by Littell. Nichols, during this time, had full authority to hire and fire employees of the Texhoma bank and make loans up to and including the legal limit of the bank. Sewell acted in an advisory capacity to the Texhoma bank during this time. Sewell and Littell were paid salaries by both the Texhoma bank and the Clinton bank.

The two banks at no time, during this period, combined their resources for the purpose of making any loan and there was no overlapping for investments, or otherwise. The two banks served different trade territories, 250 miles apart, and made different types of loans, principally because the needs of the two localities in this connection were different. There is no dispute over the fact that the Clinton bank had eight employees and was subject to the act. The Texhoma bank had only four employees, other than Sewell and Littell.

Since the Texhoma bank, an employing unit under the act, had in its employ less than eight employees, its liability under the Oklahoma Employment Security Act (40 O.S. 1941, ch. 6) as an employer must arise under section 229(e) (4) of the act, which reads as follows:

"Any employing unit which together with one or more other employing units, is owned or controlled (by legally enforceable means or otherwise) directly by the same interest, or which owns or controls one or more other employing units (by legally enforceable means or otherwise), and which, if treated as a single unit with such other employing unit, would be an employer under Paragraph (1) of this Subsection, . . ."

We have heretofore considered the problem raised by this affiliate provision of the act in State ex rel. Oklahoma Employment Security Commission v. Tulsa Flower Exchange, 192 Okla. 293, 135 P. 2d 46.

The question before us is whether, under the facts, the Texhoma bank and the Clinton bank are both owned or controlled (by legally enforceable means or otherwise) directly by the same interest.

The word "control", as used in provision of State Employment Security Act authorizing grouping of employing units which employ less than eight persons, and which are owned or controlled directly by the same interest, so as to render the act applicable, means full authority to direct every act, and to formulate every business policy, of the employing unit without right of legal interference from anyone with respect to all lawful pursuits. State v. Tulsa Flower Exchange, above.

In the ownership of the corporate stock, above, we cannot find this direct control. The owner or owners of the majority of the capital stock of a corporation can never have direct control of the corporation merely by reason of such ownership. Direct control is always in the board of directors. 18 O.S. 1941 §104; State v. Tulsa Flower Exchange, above. The control of stockholders as such is merely indirect control.

Tit. 12, U. S. C. A., sec. 71, provides:

"The affairs of each association shall be managed by not less than five directors, who shall be elected by the shareholders at a meeting to be held at any time before the association is authorized by the Comptroller of the Currency to commence the business of banking; and afterward at meetings to be held on such day in January of each year as is specified therefor in the articles of association. The directors shall hold office for one year, and until their successors are elected and have qualified."

The contention that the acts of Sewell in connection with this matter show actual control of the Texhoma bank in him is without merit. In Bingham v. National Bank of Montana, 105 Mont. 159, 72 P. 2d 90, it is held in effect that the president of a national bank is executive agent of directors to perform such duties as may be devolved upon him, or, by implied authority, duties which are fairly within ordinary routine

of his business as president, and he is not the corporation, and cannot take place of governing board or incur liabilities outside ordinary business of bank without special authority.

Even though Frank A. Sewell, Mrs. Frank A. Sewell, Arthur Littell, and Mrs. Trimble B. Latting own 240 shares, or 96%, of the stock in the Texhoma bank and 485 shares, or 97%, of the stock in the Clinton bank and are four of the six stockholders in each bank, and although these four stockholders are each directors in both banks constituting four of the five directors in each bank, and the president and vice president of the two banks are the same men, we do not think that these four persons constitute the "same interest" so that both corporations are subject to common direct control.

In State v. Tulsa Flower Exchange, above, we said:

"In dealing with the act it should be borne in mind that a corporation is a legal entity separate and apart from its stockholders, individually or as a body. The board of directors controls its functions. The board operates as an entity and not as individuals, and where the members of the board as individuals control another business, the board and the individual members thereof should never be classified as the 'same interest', operating the two separate businesses, under the affiliate or grouping clause of the act, unless the members of the board also own all the stock in the corporation. However, if the arrangement is designed to avoid the tax, another question would arise."

There is no contention that there is any arrangement here to avoid the tax. Then it follows that since the boards of directors of the two banks were not identical and the identical members of the two boards did not own all the stock in the two corporations, they were not the "same interest".

The state contends, also, that the fact of payment by the Texhoma bank of salaries to Sewell and Littell and the manner of such payment when actual control is said to be in the manager of that bank, Nichols, show actual control in Sewell. There is no merit to this contention. It is not unusual for officers of corporations to receive payment. The manner of such payment is a matter of private agreement and is certainly no real evidence of actual control of a corporation.

Affirmed.

GIBSON, C.J., and OSBORN, BAYLESS, WELCH, CORN, and DAVISON, JJ., concur. HURST, V.C.J., dissents.