(No. 31986.—

RALPH D. TODD *et al.*, Appellants, *vs.* FRANK ANNUNZIO,
Director of Labor, Appellee.

*Opinion filed November 27, 1951.*

CRAMPTON, J., dissenting.

GUMBART, GRIGSBY & GUMBART, of Macomb, for appellants.

IVAN A. ELLIOTT, Attorney General, of Springfield, (WILLIAM C. WINES, RAYMOND S. SARNOW, JAMES C. MURRAY, and A. ZOLA GROVES, all of Chicago, of counsel,) for appellee.

Mr. JUSTICE SCHAEFER delivered the opinion of the court:

The plaintiffs, Ralph D. Todd, Eva D. Todd, and Emma L. B. Todd, brought an action under the Administrative Review Act in the circuit court of Hancock County to review a decision of the Director of Labor affirming assessments against them for contributions to the unemployment compensation fund. From a judgment for the Director, plaintiffs prosecute this appeal.

The facts are undisputed. Ralph Todd, hereafter referred to as Todd, and Eva Todd, his mother, have owned and operated the Amus-U Theatre at LaHarpe as a partnership since 1938. Todd owns seventy-five per cent of the business and his mother twenty-five per cent. In January, 1943, Todd purchased the Diana Theatre in Blandinsville on his own account. This theater was sold in January, 1949. In the meantime, Todd and Emma L. B. Todd, his wife, owned the Dawson Theatre at Stronghurst as equal partners from June, 1945, to December, 1947. Blandinsville and Stronghurst are both fifteen miles from LaHarpe and the same distance from each other.

During the period Todd had a proprietary interest in the theaters in question, each had three employees, a manager, an operator and a ticket seller, and was, to some extent, operated as a separate business. For example, each theater had its own office, maintained a separate bank account in a different bank, purchased supplies and services independently of the others, kept separate books, and filed separate social security and income tax returns. On the other hand, the booking of films for all three theaters was performed by Roy V. Hallowell, manager of the Amus-U

Theatre, under the supervision and control of Todd. In addition, although each theater had a separate office and bank account, Hallowell kept the books and records for the three theaters and drew all checks for each of them in his office in LaHarpe. This was the only office having telephone service. Although Todd customarily countersigned all checks, sometimes his mother countersigned checks drawn against the account of the Amus-U Theatre. Todd authorized Hallowell to hire and discharge employees at the three theaters, but invariably performed this duty himself, upon consultation with his mother or his wife. Accompanied by Hallowell, Todd also personally conducted a weekly bank night at each theater. Hallowell's salary was apportioned among the three theaters, the manner of the apportionment being determined by agreement with Todd.

Between December, 1948, and November, 1949, the Director of Labor made a number of assessments against plaintiffs for contributions and interest for appropriate years, commencing in 1943, and aggregating as follows: Amus-U Theatre $940.26, Diana Theatre $661.32, and Dawson Theatre $1053.58. All assessments were made upon the basis that the three employing units constituted a single employer having the statutory minimum of six employees. Upon protests duly filed, a hearing was had before a departmental representative. He found that during the years in question the employing units involved were owned and controlled by the same interests, and recommended that the assessments be affirmed. The Director affirmed the assessments and this action followed.

The principal question presented for determination is whether plaintiffs were covered by the Unemployment Compensation Act. Under the statute, liability for contributions is imposed upon any individual or organization meeting any one of the several definitions of an employer. Section 2(e)(5), (Ill. Rev. Stat. 1949, chap. 48, par. 218(e)(5),) provides, in part: " 'Employer' means: * * * (5) Any

employing unit which together with one or more other employing units is owned or controlled, directly or indirectly, by legally enforceable means or otherwise, by the same interests, * * * and which if treated as a single unit with such other employing units or interests or both would be an employer under paragraph (1) of this subsection." The paragraph referred to defines "employer" as any employing unit having six or more employees within twenty or more calendar weeks in a calendar year. (Ill. Rev. Stat. 1949, chap. 48, par. 218(e)(1)(B).) The words "owned or controlled" in section 2(e)(5) have been construed to mean "owned and controlled." (*McGrew Paint & Asphalt Co.* v. *Murphy*, 387 Ill. 241; *Moriarty, Inc.* v. *Murphy*, 387 Ill. 119.) As thus construed, section 2(e)(5) permits the combination of the employment experience of separate employing units only where they are both owned and controlled by the same interests.

During the years in question, Todd owned seventy-five per cent of the Amus-U Theatre, fifty per cent of the Dawson Theatre, and was the sole proprietor of the Diana Theatre. These holdings constituted ownership of the three businesses, within the contemplation of section 2(e)(5). (*McGrew Paint & Asphalt Co.* v. *Murphy*, 387 Ill. 241; *Moriarty, Inc.* v. *Murphy*, 387 Ill. 119; *Zehender & Factor, Inc.* v. *Murphy*, 386 Ill. 258. See: *Lindley* v. *Murphy*, 387 Ill. 506.) As stated in *Karlson* v. *Murphy*, 387 Ill. 436: "Sections 2(d), 2(e)(1)(B), 2(e)(2) and 2(e)(5), among others, define 'employer,' under certain conditions so as to include several employing 'units,' and to include two or more separate corporate entities, if owned and controlled directly or indirectly by the same interests. By these provisions, the General Assembly has made it abundantly clear that enterprises or units which economically and in reality constitute but a single business shall be deemed a single employer, familiar rules of corporation law, partnership law and the law of master and servant to the contrary

notwithstanding." In *McGrew Paint & Asphalt Co.* v. *Murphy*, 387 Ill. 241, where it was stipulated that O. V. McGrew owned a majority of the shares of each of four corporations and was a minority shareholder in a fifth, Insul-Mastic Laboratories, Inc., this court said: "We hold that the corporations, other than Insul-Mastic Laboratories, Inc., are liable for contributions under section 2(e)(5), * * * for the reason that the agreed facts conclusively demonstrate that McGrew owned and controlled each of these four companies, within the contemplation of section 2(e)(5)."

Plaintiffs contend that the theaters were not owned by the same interests because the word "interests" does not mean an individual. The Unemployment Compensation Act, being remedial, should be liberally construed. (*Crouch* v. *Murphy*, 390 Ill. 112; *Lindley* v. *Murphy*, 387 Ill. 506.) Moreover, whether liberally or strictly construed, the word "interests," as used in section 2(e)(5), is sufficiently broad to include an individual.

Plaintiffs next contend that the finding of the Director that Todd controlled all three theater businesses is manifestly against the weight of the evidence. From the facts narrated it is clear that neither Eva Todd nor Emma Todd was active in the management or control of the theater businesses in which they owned an interest and that the challenged finding is not contrary to, but rather in accord with, the weight of the evidence. Plaintiffs place reliance upon *Moriarty, Inc.* v. *Murphy*, 387 Ill. 119, as requiring a reversal here. While it is true that the factual situations involved are similar, it should be observed that, in the *Moriarty case,* the Director found that Moriarty owned the several corporations involved but made no finding with respect to the control of the corporations. Upon review, this court, construing section 2(e)(5), held that the words "owned or controlled" properly meant "owned and controlled." In the absence of findings as to control,

the judgments of the circuit court confirming the assessments made by the Director were reversed and the causes were remanded to the circuit court, with directions to refer each case to the Director for further proceedings, that is, for a hearing and determination upon the issue of whether the corporations, in addition to being owned by Moriarty, were also controlled by him. Manifestly, the decision in the *Moriarty case* does not require a reversal in the present case.

Lastly, plaintiffs contend that the Director is estopped from assessing contributions against them by reason of a delay of almost five years in making the assessments and delays up to eighteen months in holding a hearing upon their protests against the assessments, with a consequent accrual of interest at the rate of one per cent per month. The short answer to this is that plaintiffs became liable for contributions commencing in 1943 and could have paid them as they fell due. In any event, the principle of estoppel is inapplicable to the State functioning in a governmental capacity. *Clare* v. *Bell,* 378 Ill. 128; *People* v. *Bradford,* 372 Ill. 63.

The judgment of the circuit court of Hancock County is affirmed.

*Judgment affirmed.*

Mr. JUSTICE CRAMPTON, dissenting:

I cannot agree with the majority opinion and the importance of the issue to many small business concerns impels me to dissent.

The question presented is whether or not the ownership and common control clause is arbitrary and unreasonable when applied to the factual situation involving the ownership and operation of these three theatres. I do not wish to be construed in opposition to the declared purpose of the act, namely, to alleviate widespread unemployment, nor to approve of decentralization of business enterprises

for the purpose of escaping contributions. It is the application of the general rule of law to the facts present here which, in my opinion, makes the rule arbitrary and discriminatory.

It has already been pointed out that under our decisions the words of the statute "own *or* control" mean "own *and* control." (Italics supplied.) Therefore, both "ownership" and "control" must be present before the businesses may be treated as a unit. The majority opinion states the facts are undisputed. It is true the facts as testified to are uncontroverted and findings thereon were made by the director, but there is a wide area of disagreement between the parties as to the proper interpretation and effect of the testimony and the correctness of the findings. The question of whether the businesses were owned and controlled by the same interests is a question of law which must be decided by the courts and not by the parties. The effect of facts stipulated is a question of law for the decision of the courts. (See *Nat. Bank of Colchester* v. *Murphy,* 384 Ill. 61, 65.) Some of the conclusions as found by the Department are directly opposite to those of appellant. For instance, the finding was made that the theatres maintained a joint office and telephone. Todd claims the office was separate and a block from the theatre in LaHarpe, where he lived, from which he conducted his farm, livestock, telephone, and other business. The finding was that Todd made all the decisions as to policies and operations of the theatres, but the evidence shows he constantly conferred with his different partners as to the policies and the hiring of managers and their joint agreement controlled. It is pertinent to point out that the Amus-U Theatre in LaHarpe was organized by Ralph D. Todd's father, Charles K. Todd, and one Ewing, in 1936, as a corporation. Later the father sold to the son one half of his interest and when the father died, in 1938, his widow, Eva D. Todd, took the father's interest under the father's will, and Ralph

Todd later purchased the share of Ewing. The corporation was then dissolved and the business operated as a partnership, but the mother retained the same ownership. In 1943, Todd became the sole owner of the Diana Theatre at Blandinsville, and in June of 1945, Todd, and his wife, Emma Louise, became equal owners of the Dawson Theatre in Stronghurst, which was sold in 1947. Thus it is obvious there was no attempt here to circumvent the law by dividing a business into smaller units to escape the act. Likewise, there is no "successor" clause to be interpreted here but the case only involves the "affiliate" or "common control clause." The businesses, it is safe to say, were operated independently, except for the services of the manager, Hallowell, who sometimes purchased pictures for all three theatres. But he was paid separately by each theatre for the services performed by him to it. All accounts, checks, returns, and incidents of the businesses were handled separately by and for each theatre in the various towns. The only question then is whether the ownership and control were vested in the same interests. These are words in common use and such should be given their plain, natural, and commonly understood meaning. Yet in their application to particular factual situations there is a great conflict of authority. Many cases are to be found wherein the businesses are treated as a unit, within the purview of the statute, when a *majority* of the stock or participation in the business is owned by the same individuals or interests. Even here, a different result has often been reached. See *Benner-Coryell Lumber Co.* v. *Indiana Unemployment Compensation Board,* 218 Ind. 20, 29 N.E. 2d 776; *State ex rel. Oklahoma Employment Security Commission* v. *First Nat. Bank of Texhoma,* 197 Okla. 652, 174 Pac. 2d 259; *Florida Ind. Com.* v. *Fraser,* 151 Fla. 755, 10 So. 2d 496; *Texas Unemployment Comp. Com.* v. *Bass,* 151 S.W. 2d 567; *Murphy* v. *Doniphan Tel. Co.* 347 Mo. 372, 147 S.W. 2d 616.

The majority opinion relies upon four cases to bring these properties within the contemplation of section 2(e) (5). They are *McGrew Paint & Asphalt Co.* v. *Murphy,* 387 Ill. 241, *Moriarty, Inc.* v. *Murphy,* 387 Ill. 119, *Zehender & Factor, Inc.* v. *Murphy,* 386 Ill. 258, and *Lindley* v. *Murphy,* 387 Ill. 506. In the *McGrew case,* a stipulation was entered into reciting that each corporation was controlled either directly or indirectly by legal and enforceable means by McGrew and, further that he owned a majority of the shares of each of the four corporations in question. The elements of ownership and control were both present and admitted. This was held to be a binding stipulation of fact and the judgments were affirmed. As to the fifth corporation involved in that case, in which McGrew owned less than a majority of the stock, the judgment was reversed, although this court said that corporation might have been liable under section 2(e)(2) under which section no finding was made.

In *Zehender & Factor, Inc.* v. *Murphy,* 386 Ill. 258, the constitutionality of the section in question was raised and upheld and it was clear that Zehender and Factor, either as partners or stockholders, together, owned and controlled the large majority interests in the drugstores and personally managed the business. The other large stockholder in only one of the stores was the landlord and he owned the shares as security for back rent.

In *Lindley* v. *Murphy,* 387 Ill. 506, the issue was one of a succession of interests in a brokerage firm under section 18(c)(6) involving the rate to be paid based upon the employment experience of the previous partnerships.

*Moriarty, Inc.* v. *Murphy,* 387 Ill. 119, has a factual situation which in many respects is similar to the case here. The accepted opinion of the court in this case holds plaintiffs cannot rely upon the *Moriarty case* for the reason the Director made no finding with respect to the control of the corporation. Yet reference to that case shows Moriarty

was president and treasurer of one corporation in which he held all the stock except two shares; that the second concern, a copartnership, was under the supervision of Moriarty and the two Doodys and in which he held a fifty per cent interest. Again, he was president of the third corporation in which he held a two-thirds interest. All companies were in the construction field. In that case we said: "The findings of the Director pertain to the ownership of the three units. There is no finding of fact as to actual joint control * * * that evidences a unification in the management and formation of policies of each employer. The ownership of the stock has evidentiary value in determining whether unification of control is present but it does not, standing alone, furnish a basis for combining the employment experience of two employers so that they may be considered as a single unit. In considering such matter, the character of the business in which each employer is engaged, the relation of one to the other, their respective locations, the ownership of interests and the management of the business of each are factors to be given consideration. The findings in that regard do not sustain the assessments."

The fifth case, *Karlson* v. *Murphy*, 387 Ill. 436, quoted from, likewise a brokerage company case, involved six successive partnerships. The opinion here assumes from the quote in the *Karlson case* that the enterprises here "economically and in reality constitute a single business." With this I cannot agree. The law of partnerships carries an elemental and statutory rule that a partner is a co-owner with his partners in specific partnership property, holding as a tenant in partnership, carrying with it as an incident thereof an equal right to the specific partnership property for partnership purposes, and a partner has no right to possess (or control) such property for any other purpose without the consent of his partners. (See Uniform Partnership Act, Ill. Rev. Stat. 1951, chap. 106½, par. 25.)

This is, most certainly, especially true where one partner, as here, owns a fifty per cent interest with another partner who likewise owns the remaining fifty per cent of that partnership and no interest whatsoever in another of the partnerships sought to be included in the "Unit," unless we can say that the close relationship of the mother and wife constituting the partners in the unrelated partnerships makes the interests the same.

The word "control" should be accorded its full and complete meaning with due regard to the general purpose for which it was used in the statute. The statute in no way limits its meaning. The word as there used should be held to connote the management and direction of every act, and the formulation of every business policy, of the employment unit, without right of legal interference from anyone with respect to all lawful pursuits. (*State ex rel. Oklahoma Employment Secur. Com.* v. *Tulsa Flower Exch.* 192 Okla. 293, 135 Pac. 2d 46.) The fact one of Todd's partners was his wife in one partnership and his mother a partner in another partnership and the further fact the theatres were operated as "related businessses" are not sufficient to justify the conclusion that they were owned and controlled directly or indirectly by the same interests. It was so held in *Huiet* v. *Dayan,* 69 Ga. App. 81, 24 S.E. 2d 728, where there were three businesses, each conducting a store handling almost identical goods and together employing more than the statutory number necessary to bring an employing unit within the Unemployment Compensation Act, and wherein one person was the sole owner of one business, he and a brother were equal partners in another and he and another brother were equal partners in a third business, although the owner of the one, who was also the half owner of the other two, did the buying for all the stores and had all deliveries made to his store, from which the merchandise was apportioned to all three. To the same effect is *State Dept. of Unemployment Comp. etc.*

v. *Vasilatos*, 21 Wash. 2d 140, 150 Pac. 2d 695. To say these businesses were owned and controlled by the same interests, in my opinion, is to read a construction into the statute which is not there. If this is to be the meaning of the statute, the legislature should so state in plain and concise terms.

The judgment, I firmly believe, should be reversed.