1999 OK 3

**INTERNATIONAL BROTHERHOOD OF TEAMSTERS GENERAL FUND, Plaintiff/Appellees,**

v.

**FLEMING COMPANIES, INC., Defendant/Appellant.**

No. 90,185.

Supreme Court of Oklahoma.

Jan. 26, 1999.

---

Maynard Ungerman, Randall L. Iola, Ungerman & Iola, Tulsa, Oklahoma, Richard G. McCracken, Michael T. Anderson, San Francisco, CA, For Plaintiff/Appellees.

John N. Hermes, Oklahoma City, Oklahoma, McAfee & Taft, Of Counsel, Oklahoma City, Oklahoma, For Defendant/Appellant.

SIMMS, J.

¶ 1 The United States Court of Appeals, Tenth Circuit, John C. Porfilio, Presiding Judge, pursuant to 20 O.S.1991, § 1601, certified to the Oklahoma Supreme Court the following question of law:

Does Oklahoma law [A] restrict the authority to create and implement shareholder rights plans exclusively to the board of directors, or [B] may shareholders propose resolutions requiring that shareholder rights plans be submitted to the shareholders for vote at the succeeding annual meeting?

¶ 2 We answer the first part of the question in the negative and the second part affirmatively. We hold under Oklahoma law there is no exclusive authority granted boards of directors to create and implement shareholder rights plans, where shareholder objection is brought and passed through official channels of corporate governance. We find no Oklahoma law which gives exclusive authority to a corporation's board of directors for the formulation of shareholder rights plans and no authority which precludes shareholders from proposing resolutions or bylaw amendments regarding shareholder rights plans. We hold shareholders may propose bylaws which restrict board implementation of shareholder rights plans, assuming the certificate of incorporation does not provide otherwise.

¶ 3 The International Brotherhood of the Teamsters General Fund [Teamsters] owns sixty-five shares of Fleming Companies, Inc. [Fleming or the company] stock. In 1986, Fleming implemented a shareholder's rights plan with the term of the plan to expire in 1996. The rights plan implemented by Fleming is an anti-takeover mechanism. Such plans give boards of directors authority to adopt and execute discriminatory shareholder rights upon the occurrence of some triggering event, usually when a certain percentage of shares has been amassed by a single shareholder. A board can place "restrictions or conditions on the exercise, transfer or receipt of" shareholder rights which can severely dilute the shareholding power of one seeking control of a company.[1] The defensive plans usually result in entrenching existing management, making a takeover without the approval of incumbent management more difficult. These rights plans can make it far more expensive to effect a takeover. Because the rights plans make the merger of companies more painful for the suitor and assist incumbent management in maintaining control, the plans are often called "poison pill rights plans" or "poison pills."

---

1. John H. Matheson & Brent A. Olson, *Shareholder Rights and Legislative Wrongs; Toward Balanced Takeover Legislation,* 59 Geo. Wash.L.Rev. 1425, 1450 (1990).

¶ 4   From a target company's perspective, rights plans can often buy valuable time to implement merger strategy or even secure more lucrative offers from other suitors.[2]   In this context, a rights plan might serve not only the protectionist objectives of an existing management, but also the company's overall interests in the event of takeover, including the interests of shareholders.

¶ 5   However, rights plans can often stifle mergers, causing some shareholder groups to view them with increasing skepticism, because, company mergers can be financially lucrative for shareholders who own stock in a target company.   A poison pill not only makes many mergers cost prohibitive and therefore might prevent a merger altogether, but it can decrease the profits in those mergers which do ultimately occur.   As a result, poison pills have the ability to strip shareholders of financial benefit which might normally be associated with a takeover.

¶ 6   The stock market has had a long history of shareholder passivity, but this is likely a thing of the past.   The rise of the institutional investor and the increased knowledge of stockholders as a whole is forcing an increased accountability to shareholders for many boards of directors.   As a result, the demands of the Teamsters in its case against Fleming is something courts may encounter with increasing frequency in the years to come.

¶ 7   The trial court, which ruled in the Teamsters' (shareholders) favor, expressed concern with Fleming's position, stating that it effectively removed corporate authority regarding share marketability from the shareholders and vested it exclusively in a board of directors, which might view the situation from the most self-interested point of view.

¶ 8   Teamsters were critical of Fleming's rights plan, seeing it as a means of entrenching the current Fleming board of directors in the event Fleming became the target of a takeover.   In 1996, the Teamsters organized and introduced a non-binding resolution for the annual shareholders meeting.   The 1996 resolution called on the Fleming board to redeem the existing rights plan.   The then current rights plan had been in effect since 1986 and was scheduled for renewal.   The Teamsters proposal was met with apparent hostility from Fleming's board and the rights plan remained intact, despite a majority shareholder vote in agreement with the Teamsters' resolution to redeem it.

¶ 9   The following year, 1997, Teamsters mounted a more organized effort to change the continued implementation of the rights plan.   Teamsters prepared a proxy statement for inclusion in the proxy materials for the 1997 annual shareholder's meeting.   With the proxy effort, the Teamsters proposed an amendment to the company's bylaws which would require any rights plan implemented by the board of directors to be put to the shareholders for a majority vote.[3]   The proposal was essentially a ratification procedure wherein the shareholders would force the board to formulate a rights plan both the board and shareholders could agree on or do away with such a plan altogether.

¶ 10   Fleming refused to include the resolution in its 1997 proxy statement, declaring the proposal was not a subject for sharehold-

**2.**   *See Supra* n. 1; *See also* In.St.Ann. § 23–1–26–5 (official comments, 1989 main volume).

**3.**   The 1997 proxy proposal provided:

Resolved, That shareholders hereby exercise their right under 18 O.S.A. Sec. 1013 to amend the bylaws of Fleming Companies, Inc. to add the following Article:
Article X
Poison Pills (Shareholder Rights Plans)
A.   The Corporation shall not adopt or maintain a poison pill, shareholder rights plan, rights agreement or any other form of "poison pill" which is designed to or has the effect of making acquisition of large holdings of the Corporation's shares of stock more difficult or expensive (such as the 1986 "Rights Agreement"), unless such plan is first approved by a majority shareholder vote.   The Company shall redeem any such rights now in effect.   The affirmative vote of a majority of shares voted shall suffice to approve such a plan.
B.   This article shall be effective immediately and automatically as of the date it is approved by the affirmative vote of the holders of a majority of the shares, present, in person or by proxy at a regular or special meeting of shareholders.
C.   Notwithstanding any other provision of these bylaws, this Article may not be amended, altered, deleted or modified in any way by the Board of Directors without prior shareholder approval.

er action under Oklahoma law. Teamsters then brought an action in the Federal District Court for the Western District of Oklahoma. The district court ruled in favor of the Teamsters, the court finding that "shareholders, through the devise of bylaws, have a right of review."[4] Fleming appealed to the 10th Circuit Court of Appeals, which submitted the certified question to this Court.

¶ 11 Fleming sought to postpone any shareholder vote on the 1997 proxy issue until after the resolution of this case. But the U.S. District Court and later the 10th Circuit denied Fleming's motion to suspend the injunction. Fleming was then forced to allow its shareholders to vote on the Teamsters' proxy. The Teamsters' resolution passed with approximately 60% of the voted shares.

¶ 12 Fleming's position is that 18 O.S. 1991 § 1038 gives the board of directors authority to create and issue shareholder rights plans, subject only to limits which might exist in the corporation's certificate of incorporation; and that shareholders cannot through bylaws restrict the board's powers to implement a rights plan.[5] The Teamsters' position is that 18 O.S.1991 § 1013 gives shareholders of a publicly traded corporation, such as Fleming, the authority to adopt bylaws addressing a broad range of topics from a corporation's business, corporate affairs, and rights and powers of shareholders and directors.[6] It is this apparent conflict which brings this federal certified question to this Court.

¶ 13 This is a case of first impression in Oklahoma and there is little guidance from other states. Oklahoma and Delaware have substantially similar corporation acts, especially with regard to Title 18, §§ 1013 & 1038 which are of primary concern here. 8 Del.C. § 109(a) & (b); 8 Del.C. § 157. However, a review of Delaware decisions revealed no comparable case from that state.

¶ 14 The 10th Circuit's question is ultimately one of corporate governance and what

---

**4.** Transcript of Oral Arguments, District Court's oral ruling, January 14, 1997, p. 31.

**5.** 18 O.S.1991 § 1038:

**Rights and options respecting stock**
Subject to any provisions in the certificate of incorporation, every corporation may create and issue, whether or not in connection with the issue and sale of any shares of stock or other securities of the corporation, rights or options entitling the holders thereof to purchase from the corporation any shares of its capital stock of any instrument or instruments as shall be approved by the board of directors. The terms upon which, including the time or times, which may be limited or unlimited in duration, at or within which, and the price or prices at which any such shares may be purchased from the corporation upon the exercise of any such right or option, shall be such as shall be stated in the certificate of incorporation, or in a resolution adopted by the board of directors providing for the creation and issue of such rights or options, and, in every case, shall be set forth or incorporated by reference in the instrument or instruments evidencing such rights or options. In the absence of actual fraud in the transaction, the judgment of the directors as to the consideration for the issuance of such rights or options and the sufficiency thereof shall be conclusive. In case the shares of stock of the corporation to be issued upon the exercise of such rights or options shall be shares having a par value, the price or prices so to be received therefor shall not be less than the par value thereof. In case

the shares of stock so to be issued shall be shares of stock without par value, the consideration therefor shall be determined in the manner provided for in Section 34 of this act.

**6.** 18 O.S.1991 § 1013(A) & (B):

**Bylaws**
A. The original or other bylaws of a corporation may be adopted, amended or repealed by the incorporators, by the initial directors if they were named in the certificate of incorporation, or, before a corporation has received any payment for any of its stock, by its board of directors. After a corporation has received any payment for any of its stock, the power to adopt, amend or repeal bylaws shall be in the shareholders entitled to vote, or, in the case of a nonstock corporation, in its members entitled to vote; provided, however, any corporation, in its certificate of incorporation, may confer the power to adopt, amend or repeal bylaws upon the directors or, in the case of a nonstock corporation, upon its governing body by whatever name designated. The fact that such power has been so conferred upon the directors or governing body, as the case may be, shall not divest the shareholders or members of the power, nor limit their power to adopt, amend or repeal bylaws.
B. The bylaws may contain any provision, not inconsistent with law or with the certificate of incorporation, relating to the business of the corporation, the conduct of its affairs, and its rights or powers or the rights or powers of its shareholders, directors, officers or employees.

degree of control shareholders can exact upon the corporations in which they own stock.

¶ 15 In the scheme of corporate governance the role of shareholders has been purposefully indirect. Shareholders' direct authority is limited. *State ex rel. Oklahoma Employment Sec. Comm'n v. First Nat'l Bank of Texhoma,* 197 Okla. 652, 174 P.2d 259 (1946); *State ex rel. Oklahoma Employment Sec. Comm'n v. Tulsa Flower Exch.,* 192 Okla. 293, 135 P.2d 46 (1943); *Sumner Coal–Mining Co. v. Pleasant,* 127 Okla. 174, 259 P. 1055 (1927); *Oberly v. Kirby,* 592 A.2d 445, 458 (Del.1991). This is true for obvious reasons. Large corporations with perhaps thousands of stockholders could not function if the daily running of the corporation was subject to the approval of so many relatively attenuated people. However, the authority given a board of directors under the Oklahoma General Corporation Act, 18 O.S.1991 § 1027, is not without shareholder oversight, 18 O.S.1991 § 1013(B).

¶ 16 Fleming's argument relies on this passage, 18 O.S.1991 § 1038 (emphasis added):

> Subject to any provisions in the certificate of incorporation, *every corporation* may create and issue ... rights or options entitling the holders thereof to purchase from the corporation any shares of its capital stock of any class or classes, such rights or options to be evidenced by or in such instrument or instruments as shall be approved by the board of directors.

In making its argument, Fleming asserts that the word "corporation" is synonymous with "board of directors" as the term is used in 18 § 1038. Therefore, according to Fleming, "every corporation may create and issue ... rights and options[.]", can actually be read to say "[every corporation's board of directors] may create and issue ... rights and options[.]" However, in light of the fact that both terms, "corporation" and "board of directors", are used distinctly throughout the General Corporation Act and within the text of 18 § 1038 itself, this assertion is flawed. Further, the Former Business Corporation Act, 18 § 1.2(1) and (23), defines "corporation" and "director" differently. The stat-

utes indicate our legislature has an understanding of the distinct definitions it assigns to these terms, and we find it unlikely the legislature would interchange them as Fleming contends.

¶ 17 While this Court would agree with Fleming that a corporation may create and issue rights and options within the grant of authority given it in 18 § 1038, it does not automatically translate that the board of directors of that corporation has in itself the same breadth of authority.

■ ¶ 18 A shareholder rights plan is essentially a variety of stock option plan. Its use as an anti-takeover mechanism does not change its essential character. While shareholder ratification of poison pills has not been tested in the courts, the same cannot be said for stock option plans as a whole. There is authority supporting shareholder ratification of stock option plans.

¶ 19 For example, in *Michelson v. Duncan,* 407 A.2d 211, 218–20 (Del.1979), shareholders ratified a stock option package, curing a voidable act of the corporation's board of directors. Unlike the instant case, *Michelson* does not focus on whether shareholders have the authority to ratify the stock option plan, but rather explains that shareholder approval can cure the invalidity of an otherwise voidable act · of the company's board. Despite this distinction, however, the case does reveal that stock option plans themselves can be subject to shareholder approval.

¶ 20 In *Robert A. Wachsler, Inc., v. Florafax Int'l,* 778 F.2d 547 (10th Cir.1985), the 10th Circuit Court of Appeals cited *Michelson* for a similar proposition, noting that shareholders can ratify an interested director's contract if fully informed of its terms. However, *Wachsler* did not involve a stock option plan.

¶ 21 Further authority for shareholder approval of stock option plans is found in the Internal Revenue Code. 26 U.S.C §§ 422(b)(1) & 423(b)(2) (emphasis added).

422(b) **Incentive stock option** ....

(1) the option is granted pursuant to a plan which includes the aggregate number

of shares which may be issued under option and the employees (or class of employees) eligible to receive options, and *which is approved by the stockholders of the granting corporation* within 12 months before or after the date such plan is adopted[.]

423(b) **Employee stock purchase plan** . . . .

(2) *such plan is approved by the stockholders of the granting corporation* within 12 months before or after the date such plan is adopted[.]

Although the option plans referred to in the revenue code are not shareholder rights plans, the revenue code's recognition of shareholder approval of stock options is similar to *Michelson,* in that it reveals stock option plans are not exempt from shareholder approval or ratification.

■ ¶ 22    We find nothing in the Oklahoma General Corporation Act, 18 O.S.1991 § 1001 et seq., or existing case law which indicates the shareholder rights plan is somehow exempt from shareholder adopted bylaws. Fleming argues that only the certificate of incorporation can limit the board's authority to implement such a plan, relying on § 1038. While this Court might agree that a certificate of incorporation, which somehow precludes bylaw amendments directed at shareholder rights plans, could preclude the Teamsters from seeking the bylaw changes which are proposed in this case, neither party has indicated Fleming's certificate speaks in any way to the board's authority or shareholder constraints regarding shareholder rights plans. We find no authority to support the contention that a certificate of incorporation which is silent with regard to shareholder rights plans precludes

shareholder enacted bylaws regarding the implementation of rights plans.

¶ 23    A number of states have taken affirmative steps to ensure their domestic corporations, and in many instances the board of directors itself, are able to implement shareholder rights plans to protect the company from takeover. The legislation is typically called a shareholders rights plan endorsement statute. However, the Oklahoma legislature has not passed such legislation. There are at least twenty-four states with these share rights plan endorsement statutes.[7]

¶ 24    Some examples of shareholders rights plan endorsement statutes which give explicit authority to directors of the corporation read as follows:

Nothing contained in this chapter is intended or shall be construed in any way to limit, modify or restrict an issuing public corporation's authority to take any action *which the directors may appropriately determine* to be in furtherance of the protection of the interests of the corporation and its shareholders, *including without limitation* the authority to adopt or enter into plans, arrangements or instruments that deny rights, privileges, power or authority to the holder or holders of at least a specified number of shares or percentage of share ownership or voting power in certain circumstances. Id.St. § 30–1706(1) (emphasis added).

[E]xcept as otherwise provided in the articles of incorporation, a corporation may create and issue, whether or not in connection with the issue and sale of its shares or bonds, rights or options entitling the holders thereof to purchase from the corporation, *upon such consideration, terms and conditions as may be fixed by the board,*

**7.** John H. Matheson & Brent A. Olson, *Shareholder Rights and Legislative Wrongs: Toward Balanced Takeover Legislation,* 59 Geo. Wash. L.Rev. 1425, 1554–58 (August 1991).

Examples of states with shareholder rights plan endorsement statutes are as follows:
Colorado, Co.St. § 7–106–208; Georgia, Ga. St. § 14–2–624; Hawaii, Hi.St. § 415–20; Idaho, Id.St. §§ 30–1610, 30–1706; Illionois, Il. St. Ch. 805 § 5/6.05(f); Indiana, In.St. 23–1–35–1(f), 23–1–26–5; Iowa, Ia.St. § 490.624A; Kentucky, Ky.St. § 271B.12–210(5), Massachusetts, Ma.St. 156B § 32A; Michigan, Mi.St. Ch.

450 § 1342a; Nevada, Nv.St. 78.378; New Jersey, NJ.St. 14A:7–7(1) & (3); New York, McKinney's Bus. Corp. Law Ch. 4, Art. 5, § 505(2)(a)(i) & (ii); North Carolina, NC.St. § 55–6–24(a) & (b); Ohio, Oh.St. § 1701.16; Oregon, Or.St. § 60.157(1) & (2); Pennsylvania, Pa.St. 15 Pa.C.S.A. § 1525, § 2513; Rhode Island, Ri.St. § 7–5.2–7; South Dakota, SD.St. § 47–33–5; Tennessee, Tn.St. § 48–16–205; Utah, Ut.St. § 16–10a–624; Virginia, Va. St. § 13.1–646; Wyoming, Wy.St. § 17–16–624; Wisconsin, Wi.St. 180.0624.

shares of any class or series, whether authorized but unissued shares, treasury shares or shares to be purchased or acquired, notes of the corporation or assets of the corporation. The terms and conditions of such rights or options may include, without limitation, restrictions or conditions that preclude or limit the exercise, transfer or receipt of such rights or options by any person or persons owning or offering to acquire a specified number or percentage of the outstanding common shares or other securities of the corporation, or any transferee or transferees of any such person or persons, or that invalidate or void such rights or options held by any such person or persons or any such transferee or transferees. Il.St. Ch. 805 § 5/6.05(f) (emphasis added).

Without limiting the generality of the foregoing, *directors are not required* to render inapplicable any of the provisions of IC 23–1–43, to redeem any rights under or to render inapplicable a shareholder rights plan adopted pursuant to IC 23–1–26–5, or to take or decline to take any other action under this article, solely because of the effect such action might have on a proposed acquisition of control of the corporation or the amounts that might be paid to shareholders under such an acquisition. In.St. 23–1–35–1(f) (emphasis added).

[T]he *board of directors of a corporation may . . . create and issue rights or options . . . which may contain provisions which adjust the option price* or number of shares issuable under such rights or options in the event of an acquisition of shares or a reorganization, merger, consolidation, sale of assets or other occurrence involving such corporation. Ky.St. § 271B.12–210(5) (emphasis added).

[T]he *directors of an issuing corporation* [are not restricted] from taking action to protect the interests of the corporation and its stockholders, including, but not limited to, adopting or executing plans, arrangements or instruments that deny rights, privileges, power or authority to a holder *of a specified number of shares or percentage of share ownership or voting power.* Nv.St. § 78.378(3) (emphasis added).

¶ 25 These examples illustrate how a board of directors can operate with relative autonomy when a rights plan endorsement statute applies. This does not suggest the absence of a share rights plan endorsement statute in Oklahoma precludes the implementation of such a takeover defense. We merely find that without the authority granted in such an endorsement statute, the board may well be subject to the general procedures of corporate governance, including the enactment of bylaws which limit the board's authority to implement shareholder rights plans.

¶ 26 This Court understands much of the reasoning behind the enactment of rights plan endorsement statutes and why so many state legislatures are inclined to facilitate this takeover protection for their domestic corporations. In addition, we understand Fleming's desire to have a rights plan available for quick, and more effective, implementation. However, if, as in this case, the certificate of incorporation does not offer directors this broad authority to protect against mergers and takeover, corporations must look to Oklahoma's legislature, not this Court, which is more properly vested with the means to offer boards such authority.

¶ 27 In answering this certified question, we do not suggest all shareholder rights plans are required to submit to shareholder approval, ratification or review; this is not the question presented to us. Instead, we find shareholders may, through the proper channels of corporate governance, restrict the board of directors authority to implement shareholder rights plans.

¶ 28 CERTIFIED QUESTION ANSWERED.

SUMMERS, C.J., HARGRAVE, V.C.J., LAVENDER, OPALA, WILSON, KAUGER, and WATT, JJ., concur.

HODGES, J., no vote.