(No. 28157.—

ARTHUR B. CROUCH, doing business as Marland Cartage Company, Appellant, *vs.* FRANCIS B. MURPHY, Director of Labor, Appellee.

*Opinion filed March 21, 1945.*

KLOHR & MERRICK, (HUBERT C. MERRICK, of counsel,) both of Chicago, for appellant.

GEORGE F. BARRETT, Attorney General, (WILLIAM C. WINES, of Chicago, of counsel,) for appellee.

Mr. JUSTICE STONE delivered the opinion of the court:

The question involved in this lawsuit is whether one William Bastyr had five or six employees during thirty-eight calendar weeks of the year 1939, as contemplated by the Unemployment Compensation Act. (Ill. Rev. Stat. 1943, chap. 48, par. 217 *et seq.*) Bastyr was engaged in the trucking business as the Marland Cartage Company. He died early in 1940 and appellant, Arthur B. Crouch, his son-in-law, took over the trucks, he having a lien on them for money advanced, and operated them. If Bastyr had but five employees during the period referred to in 1939, then no liability exists in this case. If he had six employees, it is conceded that the sum of $568.45 assessed against appellant as his successor, is correct. Specifically the issue is narrowed down to whether one Harriet Nelson was an employee of William Bastyr in 1939. Appellant contends that she never was an employee of William Bastyr but was, during all that period, in full time employment with Phillips Petroleum Company, of whom appellant, Crouch, was the manager.

William Bastyr in 1939 owned and operated four dump trucks under the name of Marland Cartage Company. He and his employees hauled limestone from different stone quarries on a day-to-day basis. The evidence is that the quarries kept all books and rendered statements together with checks to Bastyr. During this time appellant Crouch was manager of the Phillips Petroleum Company, located in Cook county, and Bastyr's name was listed in the telephone directory under the same number as the Phillips gasoline station. Harriet Nelson was a full-time, paid employee of the Phillips Petroleum Company as bookkeeper, stenographer, stock and order clerk. The evidence shows that she also at times received hauling orders for Bastyr when he and appellant were not present. She occasionally helped Bastyr, as an accommodation, when he became confused in keeping his books, but received no pay for any services she

performed for him. She was in no sense under his direction. He kept his own books in so far as he had any. Harriet Nelson never at any time did any stenographic work for him or work of any other kind for remuneration of any sort. She had no contract of service with him and the evidence shows that what she did for him was simply occasional and as an accommodation, as her full time was taken by Phillips Petroleum Company.

One Miller, a field auditor for the Department of Labor, on examination of the books of the Marland Cartage Company in March, 1940, reported the Marland Cartage Company as having six employees for thirty-eight weeks of the year 1939, of whom Harriet Nelson was one. This report was affirmed over the protest of appellant who sued out a writ of *certiorari* in the circuit court of Cook county, which writ was quashed, the decision of the Director of Labor was affirmed and judgment entered. Appellant insists here that the finding of the Department that Harriet Nelson rendered services in the employment of Bastyr, and therefore was in employment with appellant, not only is contrary to the manifest weight of the evidence, but there is no evidence in the record to support such a finding. This constitutes the issue in the lawsuit.

Appellant argues here that the act should be construed as designed and intended to cover persons whose work or services were performed for remuneration in some form, while appellee, on the other hand, insists that the act being remedial legislation should be liberally construed, and that under the facts of this case Harriet Nelson's services constituted employment as defined by section 2(f)(1) of the act, and that, as the act no longer contains requirements that the services be performed for wages, the fact that she was paid no wages does not militate against the contention that she was in employment.

This court has construed the Unemployment Compensation Act to be remedial legislation and held that it should

be liberally construed to the end that intended benefits under its provisions be received by employees, and that the act is to be strictly construed against an employer claiming exemption from liability. (*Grant Contracting Co.* v. *Murphy*, 387 Ill. 137; *Zehender & Factor, Inc.* v. *Murphy*, 386 Ill. 258.) It was held in the cases cited that the common-law concept of master and servant does not apply to this act. These holdings, however, afford no ground for any unusual or tortuous construction of the language of the act. As originally enacted and until the amendment of 1939, employment was defined as "service, * * * performed for wages or under any contract of hire, written or oral, express or implied." (Sec. 2(f)(1) Unemployment Compensation Act 1937.) The amendment effective May 24, 1939, omitted the words "for wages." It did not exclude, however, remuneration in any form as the basis of employment under the act. The effect of the amendment was to widen the definition to include remuneration in any form. *Van Ogden, Inc.* v. *Murphy, post,* p. 133.

The Unemployment Compensation Act declares its policy and moving purpose to be to alleviate the evils flowing from widespread unemployment and to provide benefits to those workers coming within the act as at least a partial reimbursement for loss of income during the period of unemployment. (*Zehender & Factor, Inc.* v. *Murphy*, 386 Ill. 258; Sec. 1, Unemployment Compensation Act.) To discern legislative intent it is necessary that an act be read in its entirety. A sentence, paragraph or section of an act, viewed without its surrounding context, may appear to have one meaning, whereas on reading it with the entire act a different intent is readily appreciated.

Appellee argues that the omission of the words "for wages" from subparagraphs (f)(1) and (f)(5) of section 2, had the effect of bringing services by persons such as Harriet Nelson within the definition of employment,

and, this being so, she was not exempted by any provisions of the act but constituted the sixth employee of Bastyr and therefore of appellant.

The question arising on this record, pertaining to the construction of the act, is whether there is to be found in it any evidence of a legislative intent that there may be employment without some sort of contract or remuneration.

Subparagraph (f)(1) of section 2 defines "employment." Subparagraph (k) of section 2 specifies when a person is unemployed, as follows: "An individual shall be deemed unemployed in any week with respect to which no wages are payable to him and during which he performs no services or in any week of less than full time work if the wages payable to him with respect to such week are less than his weekly benefit amount."

It is also provided in subparagraph (k) of section 2 that, "notwithstanding any other provisions of this act, an individual shall be deemed to be unemployed during a period of six or less consecutive days, if such days occur between the end of a week of unemployment and the beginning of a pay period week of the employing unit for whom he has begun to work." Section 2(f)(5)(A) provides that services by an individual shall be deemed to be employment subject to the act unless and until it is proved that such individual "has been and will continue to be free from the control or direction over the performance of such services, both under his contract of service and in fact." Section 4 of the act relates to the payment of benefits and refers to wages as the measure of the weekly benefit amount. Section 5 defines part-time workers and provides that the Director may prescribe rules for determining their weekly benefit and the amount of wages required to qualify such worker for benefits. Section 6(e) provides that no one is eligible for benefits who has not, during the base period, earned wages of an amount equal to not less than $225.

It is apparent from the foregoing provisions of the act that the legislative intent and policy of the act is that employment shall be based upon a contract of hire or on employment for remuneration, whether it be wages, commissions, or of whatever form it might consist. By section 2(g) of the act wages are defined to include every form of remuneration payable for personal services. *Van Ogden, Inc.* v. *Murphy, post,* p. 133.

The Attorney General argues that as an employee who receives less than the statutory minimum for eligibility to benefits under the act may nevertheless be considered a sixth employee for the benefit of the other five, though himself not entitled to benefits, so one who is in any way employed, though without any remuneration whatever, may also be considered a sixth employee and that to hold otherwise would result in injustice to such other five employees. There is nothing in the act, however, which justifies the conclusion that one who incidentally assists as an occasional accommodation and wholly without remuneration in any form is to be considered an employee. The sections of the act above referred to justify this conclusion. *Smith* v. *Murphy,* 384 Ill. 34, cited by the Attorney General, does not support a contrary view. It was found in that case that the claimed employee received some remuneration.

Harriet Nelson was a full-time employee of the Phillips Petroleum Company. If she also was an employee of appellant and was discharged by Phillips, she would not be in unemployment and entitled to benefits under the act because she would still be in employment by appellant, and so would not be eligible to compensation because not unemployed, and this in spite of the fact that she received no remuneration for her services. We believe the legislative intent as expressed in the act is that to constitute a person an employee such person must perform services for remuneration of some sort, measurable in money value.

In *Independent Petroleum Corp.* v. *Fly*, 14 Fed. 2d 189, (5th C.C.A. 1944,) the question arose, under the Federal Unemployment Compensation Act, whether the secretary of a corporation, who rendered nominal services without remuneration of any sort, was an employee of the corporation, and it was held that she was not, though she was an officer of the corporation.

The reasonable construction of the act, as amended and now in force, is that it shows a legislative intent to apply it only to express or implied contracts for services to be remunerated for in some form, and not to occasional accommodation services for which no remuneration is made, or for which no one is expected to pay or receive pay in any form.

For reasons herein expressed, the judgment of the circuit court is reversed and the cause is remanded to that court, with directions to quash the record of the Director.

*Reversed and remanded, with directions.*