(No. 32661.—

Pipe Trades, Inc., Appellant, *vs.* Fern R. Rauch, Director of Labor, *et al.,* Appellees.

*Opinion filed March 17, 1954.*

EUSEBIUS J. BIGGS, of Chicago, *pro se,* assignee of appellant.

LATHAM CASTLE, Attorney General, of Springfield, (WILLIAM C. WINES, RAYMOND S. SARNOW, and A. ZOLA GROVES, of counsel,) for appellee Director of Labor *et al.;* JAMES A. SPROWL, WESLEY G. HALL, and WILLIAM B. DAVENPORT, all of Chicago, (JOHNSTON, THOMPSON, RAYMOND & MAYER, of counsel,) for appellee NORBERT J. Muller.

Mr. JUSTICE DAILY delivered the opinion of the court:

We consider here an appeal from an order of the circuit court of Cook County affirming a decision of the board of review for the Department of Labor that Pipe Trades, Inc., was, during the year 1948, an employer liable for payment of contributions under the Unemployment Compensation Act. (Ill. Rev. Stat. 1947, chap. 48, pars. 217-250, incl.; Jones Ann. Stat. 45.128.) The appellant is actually Eusebius J. Biggs, who became the sole owner of Pipe Trades, Inc., in 1949, and who appears in this court *pro se* as the assignee of the company; the appellees are the Department of Labor, certain of its officers, and one Norbert J. Muller, whose claim for unemployment compensation precipitated the action.

The record discloses that Muller filed his claim during the benefit year which began April 1, 1949, and the deputy of the Department who processed it issued a finding that Muller had earned no wages in insured work in 1948. Muller carried the matter to the referee of the Department contending that he had earned more than $225 in wages while employed by Pipe Trades during that year and that Pipe Trades was an employer within the definition of the act. After a hearing, the referee reversed the deputy and entered a decision that Pipe Trades was an employer, that it was liable for contributions and that Muller had earned in excess of $1000 in wages during the last two quarters of 1948. Upon appeal to the Board of Review and upon administrative review in the circuit court of Cook County, the decision entered by the referee was adhered to.

Although somewhat obscured by the manner of appellant's presentation, the chief legal issue presented is whether Pipe Trades was an employer covered by the Unemployment Compensation Act. Under the statute, liability for contributions is imposed upon any individual or type of organization meeting any one of the several definitions of employer found in section 2. (Ill. Rev. Stat. 1947, chap.

48, par. 218.) One such definition, contained in section 2(e)(5), is as follows: "'Employer' means: * * * (5) Any employing unit which together with one or more other employing units is owned or controlled, directly or indirectly, by legally enforcible means or otherwise, by the same interests, or which owns or controls one or more other employing units directly or indirectly, by legally enforcible means or otherwise, and which if treated as a single unit with such other employing units or interests or both would be an employer under paragraph (1) of this subsection." The paragraph referred to, which is section 2(e)(1)(B), defines "employer" as any employing unit having six or more employees within twenty or more calendar weeks in a calendar year, and in the present case it is conceded both that Pipe Trades was an employing unit and that it did not have the work experience prescribed by the said paragraph (1). Thus, the issue presented is whether Pipe Trades was an employer within the meaning of section 2(e)(5). In approaching the facts of the case it is to be borne in mind that the words "owned or controlled" in the section have been construed to mean "owned and controlled" and, as thus construed, permit the combination of the employment experience of separate employing units only where they are both owned and controlled by the same interests. *Todd* v. *Annunzio,* 410 Ill. 343; *McGrew Paint & Asphalt Co.* v. *Murphy,* 387 Ill. 241; *Moriarity, Inc.* v. *Murphy,* 387 Ill. 119.

It is the contention of appellees, and was the apparent basis for the decisions of the lower tribunals, that Pipe Trades, Inc., and the E. J. Biggs Construction Company were owned and controlled by the same interests in 1948 and that the combining of their employment experience made Pipe Trades liable for contributions. While admitting that the combined employment experience would be sufficient to render Pipe Trades liable, appellant Biggs insists that the two organizations were neither owned nor con-

trolled by the same interests within the definition of section 2(e)(5).

The facts pertinent to the issue show that the E. J. Biggs Construction Company was incorporated in September, 1945, and engaged in business as a general contractor. It is admitted that Eusebius J. Biggs has always been in full charge of the business and he is referred to as its manager in the corporate minutes. The officers and directors from the inception of the corporation through 1948 were Cecelia G. Biggs, president and treasurer, and George W. Voltz, secretary. Twenty shares of stock representing a capitalization of $2000 were issued and during the year in question Cecelia G. Biggs held 18 of the shares, while Catherine M. Biggs and Voltz held one share each. Cecelia G. Biggs is the wife of Eusebius J. Biggs and Catherine M. Biggs is his daughter. Early in the proceedings before the referee, Biggs testified that he owned a half share of stock in the construction company but at a later appearance testified that he was in error in so stating. Other evidence was to the effect that Biggs had never invested money in the corporation, that Mrs. Biggs had inherited some money in 1944 and invested approximately $1800 in the business, and that Biggs bought his wife's stock in 1949 for $3000 by paying off a mortgage for that amount on what Mrs. Biggs terms "her" home.

The evidence shows that Mrs. Biggs's activities in the construction company consisted of signing checks, answering the phone or meeting people in her husband's absence from the office, which was in the family residence, and the keeping of various records. The corporation paid no dividends; Mrs. Biggs received no salary; she could not testify positively whether the company had ever made a profit and she never participated in the profits except to the extent her husband benefited and provided her with a higher standard of living and met his family obligations. Biggs

testified that he drew no fixed salary during the year but at the conclusion of each year would pay himself an amount commensurate with the profits. While he stated that he usually advised his wife of the amount he was drawing, that she was always agreeable and that the other stockholders did not object to the procedure, the only interpretation which can come from the facts shown is that Biggs had uncontrolled discretion in fixing the amount of his annual salary from the construction company and in the disposition of the firm's profits.

Turning now to the Pipe Trades organization, it appears that Biggs first adopted the name in approximately 1940, and used it to buy plumbing materials for construction work in which he was engaged. In December, 1945, the Construction Company had difficulty in getting subcontractors to accept its plumbing and heating work and the directors of the company resolved to communicate with one James F. Walsh, a master plumber who had subcontracted at least one job for the company, with a view to having him handle its plumbing and heating. Thereafter, on January 2, 1946, Pipe Trades, Inc., was formed and stock was issued a few days later as follows: Cecelia G. Biggs, 7 shares; James F. Walsh, 1 share; E. W. Kilgore, 1 share, and George W. Voltz, 1 share. At the first hearing before the referee, Biggs testified that he owned a half share of stock in Pipe Trades and that he did not know who owned the remaining shares. At a later hearing, he testified that the seven shares issued to his wife had been immediately assigned by her to him, and the stock certificates so reflected, but that the transfer was not recorded in the Pipe Trades books in order to conceal the true ownership of the shares from a union which had allegedly threatened him with physical violence. In explaining his previous testimony about the ownership of the shares, Biggs stated that he had forgotten about the assignment

from his wife; that she had invested nothing in Pipe Trades while he had invested $700 therein; and that he paid his wife nothing for the shares assigned.

Named as officers of Pipe Trades at the time of its incorporation were E. W. Kilgore, president; James F. Walsh, vice-president, and Cecelia G. Biggs, secretary and treasurer. Biggs likewise carried the title of manager of this corporation and, when testifying, he stated that in 1948, the firm's policies were established by the board of directors and carried out by James F. Walsh. In this respect, the record shows that Mrs. Biggs did not attend the meetings of the board or stockholders and that her sole activity in the corporation was the countersigning of its checks along with Walsh. Although the minutes do not reflect that Biggs attended such meetings, his name is frequently mentioned therein.

Pipe Trades did all of the plumbing and heating work for the E. J. Biggs Construction Company and, in addition, did plumbing work for others. All such work was done under the on-the-job supervision of Walsh, without whose master plumber's license Pipe Trades would have been unable to function. Walsh testified that Biggs gave him no orders with respect to jobs performed for others, which constituted the majority of the work, but that he did, as any general contractor would do, give him instructions with respect to work for the Biggs Construction Company. Walsh handled all estimates and matters pertaining to plumbing and testified that he consulted Biggs in some cases only about prices that should be charged for materials. For his services, Walsh drew $80 weekly against future profits of the corporation.

Other facts pertaining to the relationship of the two corporations show that both Pipe Trades and the construction company shared a joint office located at the residence of the Biggs family and those seeking employment with Pipe Trades would report there to Biggs, his wife, or one

Weber, a bookkeeper, from whence they were sent out to the site of the plumbing job where they reported to Walsh. Pipe Trades paid no rent for the office, Biggs explaining that it compensated for rent by performing work for the construction company at a lower rate. Other evidence, however, showed that the title to the home was not in the construction company but was in a trustee under an agreement which made Mrs. Biggs the sole beneficiary. The close relationship of the two corporations is further evidenced by the corporate minutes of the construction company which, upon different occasions during 1946 and 1948, show its need for and preoccupation with the matter of obtaining plumbers and steam fitters for Pipe Trades, its resolve to combat union activities against Pipe Trades, its efforts to secure plumbing permits for Pipe Trades and its interest in Pipe Trades's objection to the payment of unemployment compensation to plumbers who allegedly refused to work.

Appellees contend that the evidence amply supports a finding that the two corporations were owned and controlled by the same interests within the meaning of section 2(e)(5). Appellant, however, urges that it shows majority ownership of the construction company in Cecelia G. Biggs, with control in her husband, Eusebius J. Biggs, and majority ownership of Pipe Trades in Biggs, with control in Walsh.

Without inquiring into the question of whether the transfer of the controlling shares in Pipe Trades from Mrs. Biggs to her husband was *bona fide* or not, we think the evidence is sufficient to support a finding that both corporations were owned by the same interests within the definition of the statute. This court has frequently pointed out that the Unemployment Compensation Act, being remedial in nature, should be liberally construed. (*Zehender & Factor, Inc.* v. *Murphy,* 386 Ill. 258; *Crouch* v. *Murphy,* 390 Ill. 112.) Broadly speaking, we have also held that

the act deals with the realities of economic life and that it is with such realities that we are concerned in determining questions which arise in the course of its administration. (*Parks Cab Co.* v. *Annunzio,* 412 Ill. 549; *Commonwealth Life and Accident Ins. Co.* v. *Board of Review,* 414 Ill. 475.) In applying these concepts to the provisions of the act, including section 2(e)(5), which define "employer" under certain conditions so as to include several employing units and to include two or more separate entities, if *owned and controlled by the same interests,* we have construed the legislative intention to be that enterprises or units which economically and in reality constitute but a single business shall be deemed a single employer, familiar rules of corporation law, partnership law and the law of master and servant to the contrary notwithstanding. (*Karlson* v. *Murphy,* 387 Ill. 436; *Todd* v. *Annunzio,* 410 Ill. 343.) In construing the word "interests" as used in the same provisions we have held that the term is not necessarily synonymous with "persons" so as to require ownership by substantially the same persons, (*Lindley* v. *Murphy,* 387 Ill. 506,) but at the same time that it is sufficiently broad and elastic to include an individual. *Todd* v. *Annunzio,* 410 Ill. 343.

The facts peculiar to the present case, and which must control our decision, show that the construction company was in dire need of obtaining plumbing services on its construction work, and to that end Pipe Trades was organized. To put it in appellant's words: "Biggs wants to be in the plumbing business because he has to be, to run a construction company." While not conclusive evidence of joint ownership, it is pertinent to note that the two companies were caused to interlock in several organizational respects. Cecelia G. Biggs was an officer in each, Voltz owned a share of stock in each and Biggs carried the title of manager in both companies. After Pipe Trades was organized, and particularly in 1948, the year under scrutiny,

Biggs's asserted role was that of controlling the construction company in which he claimed no proprietary interest while, at the same time, he exercised no control over Pipe Trades of which he claimed to be the real owner. When this assertion is measured against the facts which show the complete dominance of Biggs over the construction company, even to the extent that he could fix his salary without formal action and with little or no consultation with its officers and directors, and the facts which show that no dividends were paid nor profits distributed, we are of the opinion that it emerges clearly that both companies were owned by the same "interests" despite the corporate organizations which made it appear that the wife owned the controlling interest of one and the husband the controlling interest of the other. Section 2(e)(5) says that the one or more employing units must be owned or controlled, directly or indirectly, "by legally enforcible means *or otherwise*" (emphasis supplied) by the same interests. When facts such as shown in this case are present, it is our belief that the words "or otherwise" must be interpreted to embrace the very realistic situation where a business, although nominally owned by a wife who takes little or no part in such business, is directly or indirectly controlled by the husband by virtue of the family relationship. Economically and realistically speaking, we are of the opinion that both corporations were clearly owned by the same interests.

In *Moriarity, Inc.*, v. *Murphy*, 387 Ill. 119, it is stated that there must be a finding of actual joint control between the two employing units as well as a unity of ownership, and that in considering such matter, the character of the business in which each employer is engaged, the relation of one to the other, their respective locations, the ownership of interests and the management of the business of each are factors to be given consideration. There are many such factors present in this case. To name a few—the construction business and the plumbing business are closely

related, and in this particular instance we have Biggs's admission that the construction company could not carry on without a dependable subcontractor to do its plumbing. Both businesses were located in the same office, with Pipe Trades allegedly paying its rent by doing work for the construction company at a cheaper rate. Employees for both companies were hired at the same location and by the same people. Biggs carried the title of manager in both companies and each had at least one officer and one stockholder in common. To overcome the significance of many of these factors, Biggs claims that Pipe Trades was controlled by Walsh. We do not believe that such an argument is founded on the facts. The record shows that Walsh was a minority stockholder and could have been removed or replaced at any time by Biggs, the majority stockholder. He admitted that he had paid no consideration for his stock and when appearing as a witness was confused as to just how much he did own. Other factors which reflect on the extent of Walsh's control are that Biggs did the hiring for Pipe Trades and that on occasion Walsh found it necessary to consult with Biggs on the price to be charged for materials. While Walsh rendered the technical services of a master plumber in making estimates and performing job supervision, the record shows that it was largely Biggs, or the construction company he controlled, which endeavored to secure permits for Pipe Trades, to settle its labor difficulties, or to determine its status as to unemployment compensation.

Looking to all the circumstances of this case with a view to the beneficent purposes of the Unemployment Compensation Act, and looking to the construction that section 2(e)(5) is concerned with substantial ownership and control of employing units rather than the technical rules of corporation or partnership law, it is our conclusion that Pipe Trades, Inc., was "owned and controlled by the same interests" as the E. J. Biggs Construction Company, and

that economically and in reality the two corporations constituted but a single business, within the contemplation of the act. This being so, the employment experience of the two companies in 1948 was properly combined and the circuit court did not err in affirming the decision of the board that Pipe Trades was an employer liable for contributions.

Amidst a confused welter of unsupported charges and accusations of connivance and persecution leveled against labor unions, the Department of Labor and its officials, the representatives of the Attorney General, the counsel who opposed him, and the court which reviewed the administrative record, Biggs, arguing as assignee of Pipe Trades, Inc., appears to contend: (1) that an administrative hearing does not constitute due process of law or, (2) that if it does, he was further denied due process in the hearing of this cause because of bias on the part of the referee, chicanery on the part of opposing counsel, by the fact that the reviewing court acted upon a record that was confused and inaccurate, and because the court refused to hear new evidence upon review.

Looking to the first contention, the argument advanced seems to be that due process of law means judicial process, a premise long since rejected by State and Federal courts. (See: *Italia America Shipping Corp.* v. *Nelson,* 323 Ill. 427; *Public Clearing House* v. *Coyne,* 194 U.S. 497, 48 L. ed. 1092.) Insofar as due process of law arises in public administrative law, the rule is concisely stated in 42 Am. Jur., Public Administrative Law, sec. 116, as follows: "While the constitutional guaranty of due process of law, the object of which is to preserve personal and property rights against the arbitrary action of public officials, applies to administrative as well as judicial proceedings, due process is not necessarily judicial process, except in the case of punishment for crime, and all the formalities of judicial proceedings are not essential to constitute due process of law in an administrative proceeding." The same section,

and many of the cases cited therein, tells us that administrative process by a board, executive or administrative officer, is as much due process as is judicial process, particularly when judicial review of the administrative action is provided. (See, also: 12 Am. Jur. Constitutional Law, Sec. 64, and cases there cited.) In the case of *Inland Empire District Council, Lumber and Sawmill Workers Union* v. *Millis*, 325 U.S. 697, 89 L. ed. 1877, the court, after recognizing that the due process clause guarantees no particular form of procedure and requires only such notice and hearing as is commensurate with the necessities of the particular case and the character of the rights affected, stated that in an administrative proceeding, (in that case before the National Labor Relations Board,) due process is satisfied so long as the requisite hearing is held before the final order of the administrative tribunal becomes effective. Thus, the requirements have been fully met in this case for it is unchallenged that appellant had notice and a hearing, and, further, it is apparent that a full process of judicial review has been available before the administrative order becomes final.

Turning now to the charge that the hearing was not conducted in a fair and impartial manner, we find Biggs's first claim to be that the referee concealed and condoned perjury by the claimant Muller when the latter appeared as a witness. In this respect it appears that the referee, in an effort to resolve a discrepancy between Muller's testimony and a department audit of the firm's employment records, as to the number of persons Pipe Trades employed in 1948, asked Muller a number of leading questions on the subject. Biggs would now have us hold that Muller's testimony was perjurious; that the referee exhibited bias by his action, and that the administrative finding was based on perjured testimony. With regard to Muller's testimony, subsequent examination disclosed that he had no accurate or official knowledge of the

firm's employment situation and that in making his personal conclusion he was confusing employees who worked ' on a project in 1949 with others employed in 1948; we find nothing in the witness's apparent confusion which shows an intent to deceive or which would support a charge of perjury. Nor do we impute bias or misconduct to the referee, for in his capacity of hearing officer it is manifest that his action was intended only to establish, as expeditiously as possible, the true state of Pipe Trades employment experience. It is difficult to impute bias or prejudice when the result of the referee's examination was to establish that the employment experience was such as to favor appellant's position. Aside from our finding that no perjury was committed, the claim that the administrative decision was based on perjury must also be rejected for the practical reason that Muller's testimony as to the number of employees did not in any way enter into the administrative decision that Pipe Trades was an employer under section 2(e)(5).

In addition to the foregoing, Biggs makes shadowy charges, omitting specific detail, that the referee was sarcastic, insulting, abusive and intimidating throughout the hearing. We find nothing in the record which supports or is susceptible of such a conclusion. On the contrary, it appears that the hearing was conducted with the utmost constraint under difficult conditions.

The charge of denial of due process by the circuit court is based upon a complaint that the record was inadequate, upon the court's refusal to consider exhibits attached to a petition wherein Biggs sought to intervene, and upon its refusal to conduct a new hearing. In regard to the latter contention, we have reiterated as recently as *Strohl* v. *Macon County Zoning Board of Appeals,* 411 Ill. 559, and *Rock Island Metal Foundry* v. *City of Rock Island,* 414 Ill. 436, that a court may not, upon administrative review, hear further evidence or conduct a hearing *de novo.* There is

nothing in the present case to cause any departure from these established principles of administrative law and the court's action in adhering to them cannot be said to be a denial of due process. As to the alleged discrepancies in the record, appellant's contentions seem to be based more on argument than on fact, and while the record is not free from minor errors, some of which were corrected in the lower court upon appellant's motion, we do not find that it is confused, incomplete or inaccurate in any material manner.

It is also charged that the result reached in the circuit court was accomplished by chicanery of counsel in misstating the record and by "arguing conclusions that are contrary to common sense." The respect in which the record was misstated so as to influence the court is not shown and will, therefore, not be pursued in this opinion. As to the argument of counsel complained of, it appears to be nothing more than legitimate argument based on inferences reasonably drawn from facts in the record. Appellant's failure to draw the same inferences can hardly be said to deny him due process of law. We find no merit to the contention.

In this court, appellant makes a belated argument that section 2(e)(5) of the Unemployment Compensation Act is unconstitutional and that the Administrative Review Act is unconstitutional. Apart from the fact that the constitutional issues cannot be raised for the first time in this court, (*Zehender & Factor, Inc.* v. *Murphy,* 386 Ill. 258; *Shoal Creek Coal Co.* v. *Industrial Com.* 300 Ill. 551,) both statutes, and their counterparts in numerous other jurisdictions, have withstood many and studied constitutional attacks. Nothing in the suggestion appellant now makes justifies any further consideration of their validity in this proceeding.

It is our conclusion that the decision of the board of review was fully supported by the evidence in this cause and that the circuit court of Cook County did not err in

refusing to disturb it. Because appellant has made many and varied claims that he was denied due process of law, we have spent more time than should be necessary in searching the abstract and record for some substantiation of his claims. We have, however, found nothing to support the serious charges made, outside of self-serving innuendos injected into the briefs, abstract and record by appellant himself, which have no value as evidence in our review of this cause. As a result of our examination we conclude that appellant was afforded the full, fair and proper hearing that is contemplated by law. The order of the circuit court will therefore be affirmed.

*Order affirmed.*