THE HERNANDO BANK *v.* DAVIDSON, et al.

No. 43104 May 25, 1964 164 So. 2d 403

*Wilroy & Wilroy, Walker, Franks & Hamberlin,* Hernando, for appellant.

*John Gregg,* Jackson; *J. O. Clark,* Iuka, for appellees.

McELROY, J.

This appeal is by a contestant to the organization of a new state bank in DeSoto County, to be known as the Bank of DeSoto, under authority of section 5160, Mississippi Code of 1942, Rec. The appeal involves questions of necessity, jurisdiction of the banking board to act, notice, the proper record on appeal, and procedural due process of law. The organization was authorized by the State Banking Board, and on appeal its action was affirmed by the Chancery Court of DeSoto County. We affirm the decree of the chancery court.

Most of the questions raised in this case were settled in Planters Bank v. Garrott et al., 239 Miss. 248, 122 So. 2d 256 (1960). The main question for our consideration is whether, on timely application, where proper notice was given, the appellant from an administrative board ruling is entitled to have the recorded minutes of the board insofar as they apply to the matter under consideration made a part of the record on appeal, where the appeal statute does not expressly provide that the minutes be set up as part of the appeal record, and where the appellant assigns as error certain deficiencies in the minutes.

The Banking Board is a creature of the statute, and the statute provides what the record should be and what should be brought up on appeal to the Supreme Court. As to the records to be kept by the State Comptroller, section 5178, Mississippi Code 1942, Rec., provides:

"The State Comptroller, examiners and all employees of the Department of Bank Supervision shall keep as records of their office proper books showing all acts, matters and things done by them."

Section 5160, Mississippi Code 1942, Rec., sets out the procedure the State Comptroller must follow in making up the record for appeal:

"When the state comptroller has completed the examination and made his investigation, he shall record his findings in writing and shall draw up his recommendations to the banking board hereinafter provided for. He shall thereupon, in writing, call a meeting of the board to give consideration to his findings and recommendations, . . . .

". . . Appeals may be taken from the chancery court to the supreme court in the manner now provided by law. Upon approval of the bond by the clerk of the chancery court aforesaid, the said clerk shall give notice to the state comptroller, department of bank supervision, of the appeal from the decision of the banking board, and it thereupon shall be the duty of the state comptroller to promptly transmit to the clerk of the chancery court aforesaid in which the appeal is pending the original or a certified copy of the application, proposed charter of incorporation and his findings or decision thereon together with the opinion and decision of the banking board, including a transcript of pleadings and testimony, both oral and documentary, . . . .

"If the decision of the banking board, or a majority thereof is favorable to the organization of the proposed bank it shall in like manner as above render a written opinion and decision, and an appeal in the manner herein set forth shall be available to any interested organizations, person or persons, who have participated in the proceedings and feel aggrieved by the decision of the banking board."

From a thorough examination of the record, we are of the opinion that the record in this case contains the requirements as set forth in the foregoing section.

The proponents filed an application for a charter with the State Bank Comptroller dated September 24, 1960. An amended application was filed with the Comptroller dated November 27, 1961. Recommendations of the Comptroller were reduced to writing; however, the transcript does not contain the date of the original recommendations. The original recommendations were read into the record at the hearing held January 11, 1962. A second recommendation of the Comptroller dated September 11, 1962, identical with the first, was made a part of the record prior to the second hearing. The first hearing was held on January 11 and 12 and the second on September 17, 1962.

At the first hearing, a special, called meeting of the Banking Board in the State Office Building, Jackson, Mississippi on January 11, 1962, The Hernando Bank, appellant, and the Bank of Olive Branch, Mississippi, which apparently does not participate in this appeal, were admitted as parties for the purpose of contesting the application, although they had filed no pleadings, and had given no notice formally or otherwise that they intended to protest the application. Several witnesses testified for the bank and several against the bank. The Board remained in session from January 11 to January 12, then recessed, and reconvened on September 17, 1962 with all parties present, including the members of the board and interested parties.

The record shows that when the Board met on September 17, 1962, their chairman, Mr. Travis, stated: ". . . this is a continuation of an adjourned meeting of the State Banking Board. We adjourned while we were in the process of considering the application for a new bank at Horn Lake. The style of it is: Proposed Bank of DeSoto, Horn Lake, Miss." This was clearly called to the attention of the proponents, and the attorneys

representing the opponents. Further testimony was taken, and at the conclusion the Banking Board rendered its written opinion and decision, into the record, which recited the Board in executive session had determined it had sufficient information and evidence upon which it could dispose of the application and had decided by a majority vote of all members in favor of the charter of the proposed bank, for the reason public necessity required the proposed bank be chartered and permitted to operate.

The record reveals that all notices were given to all proponents, opponents, and members of the Banking Board. It shows all were present at all times at the hearing, and that they actively participated. Questions were asked by proponents and opponents, and witnesses were introduced by both. The record reveals these facts to be true, the clerk certified the truthfulness of the record, and the chancellor found the facts revealed to be true.

The opinion and decision of the Banking Board to create the bank was properly signed by the members of the Banking Board and properly certified to by Llewellyn Brown, State Comptroller, Department of Bank Supervision and Ex Officio Member of Banking Board, as follows:

"I, Llewellyn Brown, State Comptroller, Department of Bank Supervision, State of Mississippi do hereby certify that I issued proper Notices to members of the State Banking Board, and interested parties, calling meetings held on January 11, 1962, and September 17, 1962, in accordance with the provisions of Section 5160, Mississippi Code of 1942, Recompiled, and

"I further certify that the attached copies of notice are true and correct copies of original notices mailed."
The record is replete with notices given to both members of the Banking Board, as well as those opposed to the organization of the new bank. No objection was ever

made in the hearing before the Banking Board as to the notices given or as to the record as it was made up at the trial before the Banking Board.

The learned chancellor held that the Board was in legal meeting as of September 17, 1962, and intimated that they legally had notice and had legal meetings prior thereto. He cited Technical Radio Laboratory v. Federal Radio Commission, 36 F. 2d 111, 66 A.L.R. 1355 (Dist. Col. App. 1929), where the appellants complained they were not given lawful notice of the charges made against the station, nor of the time and place of the meeting to be held by the commission. This complaint was answered by the fact that the appellants actually appeared by counsel at all of the hearings and submitted evidence and otherwise participated therein.

In sustaining in part the appellant's motion for writ of certiorari, the chancellor quoted from section 5160 of the Code, which provides what shall be included in a record for appeal. It states the Comptroller shall transmit to the clerk "the original or a certified copy of the application, proposed charter of incorporation and his findings or decision thereon together with the opinion and decision of the banking board, including a transcript of pleadings and testimony, both oral and documentary." The chancellor stated he believed these provisions to have been met, though highly informally and inartificially, and the request for certiorari was in part overruled.

The chancellor further stated in his opinion that it appeared that everyone who has made a careful study of the matter has found that public necessity requires the establishment of new banking services in the area which the proposed new Bank of DeSoto seeks to serve. The Banking Board, having heard all the testimony and having the benefit of the Comptroller's findings, found in favor of the new bank on the basis of "information and evidence." The chancellor, having thoroughly con-

sidered the entire record, declared that on the basis of "material, competent, relevant testimony, it is the Court's finding that the decision of the Banking Board is supported by substantial evidence."

At the beginning of the hearing on January 11, 1962, the Banking Board was given the benefit of the Comptroller's findings. Obviously, the Comptroller in making his examination had been very careful to adhere closely to Code section 5160, which provides in part:

"The state comptroller shall then make an investigation of the number of unit banks and location thereof (excluding branch offices which branch offices shall not be considered as banks) then serving the area in which the proposed new bank is to be located, the ratio of capital funds to total deposits therein, the record of earnings and condition of existing banks and what effect, if any, a new unit bank would have on them, the number of previous bank failures in the area and their liquidation record and banking history generally in the area, the population of the area wherein the proposed bank will be located and relation to number of banks operating therein, reasonable prospects of growth of the area and its financial resources and whether the same are static, progressive or retrogressive, expectation of profitable operation of the proposed new bank, and the morals and business character of the prospective incorporators and such further investigation to determine whether the public necessity requires that the proposed new bank should be chartered and permitted to operate."

Appellant advanced in its brief a number of arguments relating primarily to the minutes of the Banking Board and notices of meetings, which appellees contend are in the nature of alleged technical errors and do not relate to the crucial question of whether the actions of the Banking Board or the chancellor were substantially prejudicial to the rights of appellant. None of these

errors are shown to affect substantial rights of appellant.

 █ A decision of the Banking Board will not be reversed on appeal where only technical errors are committed. In order for there to be reversible error there must be a clear showing that the error complained of is "substantially prejudicial" to the appellant and the public. Planters Bank v. Garrott et al., 239 Miss. 248, 122 So. 2d 256 (1960). Thus, in the Planters Bank case, although said by this Court to be technically erroneous, it was held that the following alleged errors were not sufficiently prejudicial to appellant or the public to require reversal on appeal: (1) The Board's action in withholding from the record the findings of the Comptroller or in treating his findings as confidential. "But the Appellant by its own action was responsible in part for the error complained of and is estopped to take advantage of the Board's failure . . ." (2) The Board's failure to require witnesses to give the names of persons who had made statements to the witnesses regarding the "reputation" of certain of appellant's bank officers. Of this complaint the Court said: "But the failure of the Board to require the witnesses to give the names, if in fact they could do so, in our opinion had no material effect upon the results of the hearing." (3) The Board's failure to render a written opinion giving its reasons for granting the Certificate of Authority.

Thus, in seeking a reversal, it is incumbent upon the appellant to show more than mere technical errors in the proceedings below. Indeed, unless appellant shows that the actions of the board in granting the certificate of authority and the Chancery Court of DeSoto County in affirming same are "substantially prejudicial", the order of the board and the decree affirming same must stand.

In order for appellant to secure reversal, it must make the showing required by Rule 11, Revised Rules of the Mississippi Supreme Court (1953), which provides:

"No judgment shall be reversed on the ground of misdirection to the jury, or the improper admission or exclusion of evidence, or for error as to the matter of pleading or procedure, unless it shall affirmatively appear, from the whole record, that such judgment has resulted in a miscarriage of justice."

██ ██ Appellant did not raise the question of improper notice at the hearing before the Banking Board. It appeared, as admitted in its brief, at the hearing and the evidence offered by appellant was received and considered. The rights of cross-examination of appellees' witnesses, argument and full trial participation were accorded appellant. By appellant's silence on the subject of notice until the case was advanced to the appellate state, it failed to preserve the technical error complained of for review and is estopped from raising the question on appeal.

With reference to appellant's complaint regarding proper notice, we agree with the chancellor, who found that the first meeting of the Banking Board on January 11, 1962 was properly called. The chancellor found that notices, signed by the Comptroller, were sent to each board member. Notices were sent to other interested parties, including appellant and the Bank of Olive Branch, which also appeared as an opponent at the hearing before the board. It was called precisely as provided by section 5160, Mississippi Code 1942, Rec. Appellant was present by its officers and attorneys, although it had previously filed no pleading in the case and done nothing of record to indicate it would contest the application.

██ ██ The chancellor further found that the Comptroller had certified that both the January 11, 1962 and

the September 17, 1962 meetings were called in accordance with the provisions of the statute. The record indicates that the January 11, 1962 hearing was properly called. The Comptroller certified for the record that the September 17, 1962 meeting was properly called. The presumption is that the Comptroller, as a public officer, acted regularly and in a lawful manner. McLeod v. State, 154 Miss. 468, 122 So. 737, 63 A.L.R. 1161 (1929). This presumption has in no way been overcome by appellant.

 █ Appellant assigned as error below, and here assigns as error that the minutes of the State Banking Board do not reflect that any action was taken in this matter, and that the statutory requisites do not appear in this case to give the Banking Board jurisdiction to hear the case. There is no way to review the serious assignments of error without the minutes appearing in the transcript on this appeal.

In 2 Am. Jur. 2d, Administrative Law, § 230, p. 58, the writer says:

"An administrative agency speaks only through its records, particularly in regard to the exercise of adjudicative or determinative powers."

In 2 Am. Jur. 2d, Administrative Law, § 441, p. 250, we find:

"It is fundamental that a court speaks only through its entries spread upon the record and it has been said that it is only safe procedure that such rule be followed by an administrative agency when acting judicially; and where statute provides that a full and complete record of contested proceedings shall be kept and directs that every order or authorization issued or approved by the administrative agency shall be entered on its records it may be said that the agency, like any court, acts and speaks only *through its written orders*." (emphasis added)

73 C.J.S., Public Administration, § 182, p. 528 says: "Since, as discussed infra § 203, in the absence of a trial de novo a court in reviewing administrative action is limited to the record, as a general rule every part of the record before an administrative agency which is necessary to a review of its decision must be made a part of the record brought before the court; . . . ."

It was stated in 2 Am. Jur. 2d, Administrative Law § 722, p. 622:

"As a general rule, administrative agencies are required to make and preserve a record of their proceedings, and judicial review of agency action is usually limited to the record made in the administrative proceedings. As a general rule, the court will not consider issues not raised below and will not consider new or additional evidence, and where the evidence upon which a finding or a determination was made is not introduced before the court, the determination may be accepted as conclusive. At least where the trial on appeal cannot be de novo it is necessary that testimony taken before the agency be transcribed for use on the appeal and the court will not proceed without it."

2 Am. Jur. 2d, Administrative Law, § 724, p. 624, states:

"It is a general rule, subject to some limitations and exceptions, that an appellate court will consider only such questions as were raised and reserved in the lower court. . . . A further element in the rule and statutes as applied to administrative agencies is that the requirement that objections to the proceedings of an administrative agency must be made while it has an opportunity for correction reflects the policy that a party must exhaust its administrative remedies before seeking judicial review and the related doctrine of primary jurisdiction, which refers matters requiring expert consideration to the administrative agency."

73 C.J.S., Public Administrative Bodies and Procedure, § 22, pp. 316-317:

"In the interests of orderly procedure and certainty as to the proceedings of administrative bodies and action taken, such bodies should, as far as practical, have written records or minutes of all proceedings before them or action taken by them. Such bodies ordinarily speak only through their records."

We are of the opinion, and so hold, that section 5160, Mississippi Code 1942, Rec., fully provides what the transcript on appeal must contain. It is stated in 73 C.J.S., Public Administrative Bodies & Procedure, § 182, at pp. 529-530:

"*Transcript.* Under some of the statutes providing for judicial review of the orders of an administrative body, a certified transcript of the record on which the order complained of was entered must be filed in court. Until such transcript is filed, the court lacks jurisdiction to consider the merits of the order. There must be compliance with the rules and regulations of the agency dealing with the preparation of the transcript. The transcript should contain, in addition to the pleadings, all the material received in evidence and nothing else."

The appellant presses the point in his motion for writ of certiorari that he was entitled to the minutes of the banking board. The chancery court granted in part the writ of certiorari, in compliance with the statute, in that it ordered the Comptroller to file with the clerk of the court all records had in the trial before the board, in order to bring before this Court the original or certified copy of application for the proposed charter of incorporation and its findings or decisions thereon, together with the opinion and decision of the banking board, including the transcript of pleadings and testimony both oral and documentary. We are of the opinion that all the record required by the statute in this case was properly before the court.

As was stated in Planters Bank v. Garrott et al., 239 Miss. 248, 122 So. 2d 256 (1960), the State Banking Board was the trier of the facts. It was an impartial tribunal legally constituted to determine the rights involved. Its findings were made upon due notice to the appellant and an opportunity to be heard. The procedure at the hearing was in every way consistent with the essentials of a fair trial; and the hearing was conducted in such a way that there would be opportunity for a court to determine whether the applicable rules of law and procedure were observed. The proceedings were according to established rules which did not violate fundamental rights. There has been no denial of procedural process of law; and after a careful review of the entire record, including the evidence offered on behalf of the respective parties, we think it is clear that the Board, in arriving at its determination did not depart from the applicable rules of law, and that its finding that the public necessity required that the proposed new bank be chartered, is supported by substantial evidence, and is neither arbitrary nor capricious. In accordance with the foregoing, we hold that all parties had proper notice in accordance with the statute, and the proper record was available to all parties as provided by the statute and was included in the record before the chancellor.

The Court further said in the Planters Bank case that the authorities are agreed that a State Banking Board or Commission is an administrative body, not an inferior judicial tribunal. The fact that the Board determines facts or passes upon questions which may affect parties and exercises judgment and discretion does not imply that it has judicial power, and the fact that some of its functions may be quasi-judicial in their nature does not make it a court. It is clear from the statute that the records are not to be as complete in every detail as those of a judicial tribunal.

In Safeway Stores, Inc. v. City of Burlingame, 339 P. 2d 933 (Cal. 1959), it was held that the review of action of an administrative agency exercising judicial powers is limited to consideration of the record made before the agency, and the request should have been made before the agency for any records pertaining to the examination of the application.

Devaney v. Board of Zoning Appeals, 143 Conn. 322, 122 A. 2d 303 (1956), held: "An appeal from an administrative tribunal should ordinarily be determined on record made before that tribunal, and only when that record fails to present the hearing in sufficient scope to determine merit of appeal or when some extraordinary reason requires it, should the court hear evidence. . . . The question whether additional testimony shall be taken by the court upon appeal calls for an exercise of the court's legal discretion, and it does not appear that its discretion was abused in this case."

In Wells and Wells, Inc. v. United States of America, 269 F. 2d 412, (USCA 8th, 1959), it was held that even though the trial court was not an appellate court, in determining the issues tried before the administrative agency, and that was the procedure followed in the case. Numerous cases were cited.

Head v. Flemming, 188 F. Supp. 297 (Ore. 1960), held that in reviewing the determination of the administrative body, the district court is restricted to the record of hearing before the administrative body and evidence produced therein. It cited Convoy Co. v. United States of America, 200 F. Supp. 10 (Ore. 1961).

See also the following cases: State ex rel. R. R. Crow & Co. v. Copenhaver, 184 P. 2d 594 (Wyo. 1947); Commonwealth v. Winchester Water Works, 303 Ky. 420, 197 S.W. 2d 771 (1946); Pipe Trades, Inc. v. Rauch, 2 Ill. 2d 278, 118 N. E. 2d 319 (1954); Dixie Carriers, Inc. v. United States of America, 143 F. Supp. 844 (USDC, S.D. Tex. 1956); Watson Bros. Transp. Co.,

Inc. v. United States of America & Interstate Commerce Comm., 180 F. Supp. 732 (Neb. 1960 USDC); Louisiana & Pine Bluff R.R. Co. v. U.S., 42 S. Ct. 25, 257 U.S. 114, 66 L. Ed. 156 (Ark.); Appeal of Univ. of Pa., Pa. Com. Pl., 73 C.J.S. 553, 29 Del. Co. 322; Washington Gas & Light Co. v. Byrnes, 137 F. 2d 547, 78 U.S. App. D.C. 107, aff. 68 S. Ct. 731, 321 U.S. 489, 88 L. Ed. 883.

There is no denial of the fact from the record that the Commission did give a hearing. Appellant appeared at all hearings and introduced witnesses who were received and considered by the Board. All questions involving the statute were determined by the proper notices given, the evidence produced before the Board, proper procedure before the chancellor, and the appeal to this Court, in accordance with section 5160.

We find no reversible error in the record, and the decree of the lower court is therefore affirmed.

Affirmed.

*Kyle, P. J., and Gillespie, Rodgers and Patterson, JJ.,* concur.