238 So.2d 856 (1970)
FIRST NATIONAL BANK OF VICKSBURG et al.
v.
George H. MARTIN et al.
No. 45794.
Supreme Court of Mississippi.
June 8, 1970.
Rehearing Denied September 21, 1970.
Dent, Ward, Martin & Terry, Brunini, Everett, Grantham & Quin, Vicksburg, A.F. Summer, Atty. Gen., by W.D. Coleman, Asst. Atty. Gen., Jackson, for appellants.
Teller, Biedenharn, Rogers & Marcus, Vicksburg, for appellees.
*857 SMITH, Justice.
George H. Martin, James P. Biedenharn, George Thomas, Herman E. Kellum, Louis E. Leyens, Sr., Stanley Levingston, Herman Marcus, George A. Morris and Edward H. Russell applied to the State Banking Board under the provisions of Mississippi Code 1942 Annotated section 5160 (1956) for a certificate of authority to incorporate a state bank to be located in Warren County at Vicksburg. Following an evidentiary hearing, the Banking Board denied the application, and the applicants appealed to the Chancery Court of Warren County. The chancellor, on the record, reversed and held that the action of the Banking Board had been arbitrary and capricious and not based upon substantial evidence. Accordingly, a decree was entered directing the Comptroller of Banks to issue the certificate. It is from that decree that this appeal has been prosecuted by the Comptroller of Banks and First National Bank and Merchants National Bank, both of Vicksburg.
It is well settled in Mississippi that upon appeal from an order of an administrative body, entered in the fulfillment of the specialized functions delegated to it by the legislature, judicial review is narrowly restricted and the action of the Board will not be disturbed unless it was arbitrary or capricious, unlawfully or unconstitutionally violated the rights of others, was beyond its power to make, or was not supported by substantial evidence. On this appeal the inquiry is limited to a determination of whether the order of the Banking Board in denying the certificate was arbitrary or capricious or was not supported by substantial evidence.
Mississippi Code 1942 Annotated section 5160 (1956) provides that, where an application is made for a certificate of authority to incorporate a new bank, the ultimate factual question for determination by the Banking Board is whether "the public necessity" requires the organization and operation of the new bank.
This Court has considered three cases involving Mississippi Code 1942 Annotated section 5160 (1956). One of these, Oliphant v. Carthage Bank, 224 Miss. 386, 80 So.2d 63 (1955) decided no question relevant to the issues presented on the present appeal. In the second, Planters Bank v. Garrott, 239 Miss. 248, 277, 122 So.2d 256, 267 (1960) this Court, in affirming the action of the Banking Board permitting the organization of the new bank, said:
Two questions are presented for our decision in the last mentioned assignment of error. The first is, what is the nature and extent of the court's power of review, in a case of this kind, and under what circumstances is the Court authorized to interfere with the decision and order of an administrative body acting within the scope of its statutory authority. The second is, whether there is substantial evidence in the record to support the decision and order of the administrative agency.
The nature and extent of the judicial review provided for in said Code Section 5160, supra, we think has been definitely settled by the decision of this Court in Dixie Greyhound Lines, Inc., v. Mississippi Public Service Commission, 190 Miss. 704, 200 So. 579, 1 So.2d 489, and the many cases following the rule laid down in that case which have been decided by us since the decision in that case was rendered in 1941. The provisions of the statute relating to appeals in that case were almost exactly the same as the provisions of the statute which we have under review in this case.
* * * * * *
The Court held in that case among other things: * * * (2) that a court of competent jurisdiction has the power to review any order made by an administrative commission to determine whether it is supported by substantial evidence, or is purely arbitrary or capricious, beyond the Commission's power, or violates some statutory or constitutional, right of an interested party; * * *.

*858 "* * * There is no question that the Commission did give a hearing. Respondent appeared and the evidence which it offered was received and considered. The sole remaining question would be whether the Commission in arriving at its determination departed from the applicable rules of law and whether its finding had a basis in substantial evidence or was arbitrary and capricious. Id. That question must be determined upon the evidence produced before the Commission."
In the third of these cases, Hernando Bank v. Davidson, 250 Miss. 23, 164 So.2d 403 (1964) this Court adverted to Planters Bank, supra, and said: "As was stated in Planters Bank v. Garrott, et al., * * * the State Banking Board was the trier of the facts. It was an impartial tribunal legally constituted to determine the rights involved. * * *"
While an order of the Public Service Commission and not the Banking Board was involved in Citizens of Stringer v. Gulf, Mobile & Ohio Railroad Company, 229 Miss. 1, 90 So.2d 25 (1956), the scope of judicial review of the administrative board's action was the same. In that case this Court quoted with approval the following statement from its opinion in Tri-State Transit Company of Louisiana v. Dixie Greyhound Lines, Inc., 197 Miss. 37, 19 So.2d 441 (1944), "* * * the findings of the Commission under Section 7815 of the Mississippi Code of 1942 are prima facie correct and that the reviewing court can not substitute its judgment for that of the Commission and disturb its findings where there is any substantial basis in the evidence for such findings, or where the ruling of the Commission is not capricious or arbitrary."
In Planters Bank this Court held "that a State Banking Board or Commission is an administrative body, and not an inferior judicial tribunal * * *."
On appeal from an order based upon a factual finding by a trier of facts, as the Banking Board was in this case, this Court accepts the evidence which supports or reasonably tends to support the conclusion upon which the order is based, together with all inferences favorable to it which reasonably may be drawn from the evidence. The Legislature delegated to the Banking Board the duty of determining whether, as a matter of fact, "public necessity" requires or does not require the establishment of a new bank in a community. At one time, it was the practice to establish or charter banks by legislative enactment. That practice has been abandoned and the Banking Board has been created and serves as an administrative extension of the Legislature for that purpose. A certain amount of expertise in the field of banking and reasonable latitude in the exercise of sound judgment must be accorded the Board in the performance of its specialized duties.
In Planters Bank, some of the facts in evidence noticed by the Court in its opinion (there is no evidence of the same or similar facts in the case now under review) were: there was only one bank in Tunica County in spite of extensive local business, commercial and industrial needs; because of its practices, large amounts of local money had been and were deposited in Memphis banks and in other banks outside of Tunica County; this money would, in the event of the establishment of the new bank, be returned and deposited there; an arrangement had been made for the acquisition of the bank building and fixtures at a nominal cost; the proposed financial structure of the new bank was sound; the existing single bank sought to maintain a monopoly; it exerted economic pressure upon its borrowers and others who were compelled to deal with it to compel them to support slates of selected candidates for public office; it made the granting of loans contingent upon the borrower agreeing to trade and do business only with businesses operated by the bank's officers and directors; it would attract from outside the county in the first year of its operation $1,500,000 in deposits of "new money"; *859 not more than 10 per cent of its total deposits would be drawn away from the existing bank and this would not injure the latter; and some 30 to 40 per cent of all checks drawn locally were drawn on funds in banks outside Tunica County. Of the evidence in Planters Bank, this Court remarked "there was every indication of a need for a second financial institution * * *."
In affirming the Banking Board's finding, the Court said that it "had before it at the conclusion of the hearing sufficient evidence and information upon which to base a decision in the matter * * *."
In Planters Bank, this Court also rejected a contention, similar to that made here, that the ultimate finding or conclusion of the Board should be reversed because it had made no express or specific detailed findings of the facts. In a case where the application is rejected, such as the present case, the statute, said the Court, required only that the Board should "render a written opinion and decision, giving its reasons for rejection." The written opinion of the Board here, rejecting the application, sufficiently complies with these requirements.
The burden of showing "public necessity" rested upon appellees. Summarized, there was evidence showing that employment, property values, earnings, bank deposits and the general economy in the Vicksburg area had shown a very substantial growth since 1956, in most instances, in excess of state averages. It was also shown that there had been great public and industrial development over the past several years and that prospects of continued economic growth were good; that a new bank would not "hurt" existing banks, would give customers a "freedom of choice," and that there was clear "justification" for a new bank and a "possible increasing need" for another financial institution. Most of this evidence was general in nature or based upon opinion. One of the appellees, however, testified that the new bank would not change the interest rate, banking hours or alter policies of the existing banks.
In the City of Vicksburg there are two existing unit banks, with several branches, three savings & loan associations, three credit unions and seventeen small loan companies. Five additional unit banks served the trade area (exclusive of Louisiana banks across the bridge) consisting of Warren County, parts of Hinds, and Issaquena, Claiborne, and Sharkey. Witnesses for both sides testified that there was no complaint or criticism of the policies or the service rendered by the existing banks and agreed that they were "aggressive" and "progressive" in their methods and policies and in meeting the banking needs of the community. There was no evidence to show that the establishment of a new bank would bring in "new money" from outside sources, that local funds to any great extent were being banked elsewhere because of any practice or inadequacy of the existing facilities, the new bank, in the main, would draw its business and deposits from the existing banks. There was testimony that a new bank in Vicksburg would "definitely weaken" the existing banks. The ratio of loans to deposits in the existing banks was sound but indicative of a liberal lending policy. In its opinion, among other things, the Banking Board said of appellees' application.
It is not the purpose of the statute nor of the authority of this Board to create or maintain a monopoly nor to encourage the restraint of trade; nevertheless, the statutory requirements are based upon the protection of the people who have deposited funds in existing banks and where the existence of adequate banking services are available, it is very difficult to prove the need for a new bank no matter how sincere the prospective incorporators and the prospective stockholders may feel as an individual viewpoint and from their personal desire to be in the banking business.
*860 The evidence which comprises the voluminous record in this case is entirely capable of supporting the Banking Board's conclusion that existing institutions are financially sound, are providing adequate banking services, that their policies are "aggressive" and "progressive" and in keeping with good banking practice, they would be weakened by the establishment of a new bank, and a public necessity for a new bank had not been established.
The rapidly expanding economy of the area may be said to make it reasonably probable that a new bank, established with a sound financial structure and prudently operated, by persons skilled and experienced in the field of banking, would succeed as a financial venture. However, evidence tending to establish the probable chances of success of such a venture did not demand of the Banking Board a finding that "public necessity," as used in Mississippi Code 1942 Annotated section 5160 (1956) required the establishment of the new bank. In Planters Bank, supra, this Court adopted this definition of "necessity" as used in the statute, and said that "necessity" as so used, means "a substantial or obvious need justifying the chartering of a new bank in view of the disclosed relevant circumstances." In Planters Bank, supra, the Court made this further observation upon the subject: "In our opinion mere convenience is not sufficient to satisfy the statutory requisite of `necessity'".
The public interests are inextricably involved in the establishment of banks. The need or necessity referred to in the statute and defined by the Court refers to a public need or necessity. It is not enough to compel the issuance of a certificate by the Banking Board to show that the proposed enterprise has an excellent chance of being financially successful as a private business venture and that the applicants desire it and are of good character and sound judgment. These facts, while relevant, do not satisfy the requirements of the statute.
Finally, in Planters Bank, the Court said:
The statute which we have under review was enacted in the exercise of the police power of the state, in the interest of the public, and as an aid to insure safe banking.
We think the chancellor was in error, when, in reviewing the record on appeal from the Banking Board, he held that the Board's order was not supported by substantial evidence and was arbitrary and capricious. The decree appealed from is reversed and the order of the Banking Board denying the application is reinstated.
Reversed and the order of the Banking Board reinstated.
GILLESPIE, P.J., and RODGERS, PATTERSON and ROBERTSON, JJ., concur.